## THE BOARD OF COMMISSIONERS OF SHAWNEE COUNTY v. THE CITY OF TOPEKA.

1. CITY — *Duty as to Streets and Bridges.* In the absence of an express statutory provision, it is the duty of a city of the first class to keep its streets, avenues, alleys and bridges in a safe condition for the traveling public; the power to do so is implied by the authority given the city to levy taxes and impose local assessments for that purpose.

2. BRIDGES, *Built by County, When — by City, When.* The provisions of our statute relating to bridges may be fairly construed to mean that the county shall have power over those within its borders, and must build and maintain them, except those within the limits of certain cities, constituting a part of their streets, which are to be erected and maintained by such cities.

3. COUNTY, *When not Bound to Maintain Bridge.* The fact that a city and a county concurred in the purchase of a bridge, and for some time exercised joint control of the same, and contributed jointly to its maintenance, does not of itself impose any liability upon such

county for the future; it has authority to render voluntary assistance in such matters, but is not obligated to furnish compulsory aid.

4. BRIDGE, *Not Maintained by County.* The mere fact that the bridge is a long one and expensive to maintain, will not, in the absence of any statutory provision, compel the county to asssist in its maintenance.

5. ——— *Unity in Control.* It is the policy of the law that there should be unity in the control of public thoroughfares, so far as possible.

*Error from Shawnee District Court.*

THE opinion states the case. Judgment for the plaintiff, *City,* at the September term, 1887. The defendant, *County Board,* brings the case to this court.

*Charles Curtis,* county attorney, for plaintiff in error.

*W. A. S. Bird,* city attorney, for defendant in error; *G. B. Andrews,* of counsel.

Opinion by HOLT, C.: The defendant in error, as plaintiff, brought its action against the board of county commissioners of Shawnee county, alleging in its petition substantially as follows: That it is a city of the first class; that in 1871 the Topeka Bridge Company, a corporation, was the owner of a toll bridge spanning the Kansas river in the city of Topeka; that on the 15th day of June of that year the said company sold and conveyed the same to the county and city for $100,000; that $50,000 was paid by the city, in its municipal bonds, and $50,000 by the county, in county bonds; that the city and the county took possession of the bridge, and exercised joint authority over the same, each granting to the Street Railway Company the right to cross said bridge, and granting to the Topeka Water Supply Company and also the Excelsior Coke and Gas Company the privilege of laying their respective pipes over said bridge, under certain restrictions; that the Kansas river is a large stream, and flows easterly through the entire length of said county; that this is the only bridge spanning said river, and is located on the main thoroughfare extending north and south through said county, and that a great many people, residents both of the

county of Shawnee and the city of Topeka, as well as of adjacent counties, cross the said bridge daily; that said county contains a population of sixty thousand people, of which number forty thousand are within the limits of the city of Topeka; that the bridge is located entirely within the limits of the city of Topeka, and is a part of Kansas avenue in said city, and has been wholly within the limits of said city since the purchase of said bridge; that after the purchase, all of the expenses of maintaining and repairing said bridge were borne equally by the county and the city up to January 11, 1882, but since that time the said county has refused to pay any of the expenses necessary to keep said bridge in repair, and plaintiff has been compelled to make all necessary repairs thereon, and has employed a policeman to watch said bridge, and has expended for its maintenance the sum of $2,304,56. The plaintiff, city, prayed judgment for that amount. The defendant demurred to the petition because it did not state facts sufficient to constitute a cause of action; the court overruled the demurrer, and rendered judgment in favor of the plaintiff for one-half the amount claimed. The defendant brings the case here.

The argument of the defendant is, that the bridge being a part of the streets of the city of Topeka, it is the duty of the city to keep it in repair. The plaintiff contends that as it is a bridge within the county of Shawnee, under our statutes the county is compelled to maintain and repair it. The bridge is described as thirty feet wide, and nine hundred feet long. The plaintiff claims further, that although it may be the duty of the city to keep in repair its streets, viaducts, culverts and smaller bridges, yet it is not its duty to maintain a bridge of the dimensions of this one, used for general travel, and owned partly by the county itself.

The law, in the absence of any express provision of the statutes, would impose upon a city of the first class the duty to keep its streets, avenues, alleys and bridges in a safe condition for the traveling public. This is implied under the the ordinary powers conferred upon it by statute, without any express provision.

1. City—duty as to streets and bridges.

This duty appears to be imposed upon the city as a municipal corporation, and the duties devolving upon its officers having care of the streets, rest upon them as officers of the city. The power to repair and maintain the streets in a safe condition conferred upon the corporation, is implied by authority to levy taxes and impose local assessments for that purpose. In conformity with these general rules, the duty to repair streets is considered to exist without positive statutory provision. We think we can safely say this is the law, and with this as a basis we will examine the provisions of our statute.

In the chapter relating to roads and highways, § 15, chapter 89, we find that all streets, avenues and alleys which are or may hereafter be laid out by law, are hereby declared public highways; and § 16 following, provides that the city shall have power to appoint a road overseer, and to receive the money that may come into the hands of such officer, and to disburse the same in any manner directed by the corporation; also, when it becomes necessary to establish a county road on the line of a city, the board of county commissioners and the authorities of the city may each appoint three householders to lay off the proposed road. We find under subdivision 31, § 11, chapter 18, Compiled Laws of 1885, relating to cities of the first class, that the mayor and council have the right to bridge the channel of streams and water-courses; and subdivision 34 of the same section provides that the city shall constitute road districts and have power to compel each male resident of the city to perform labor upon the streets, or pay the street commissioner in lieu thereof, and provides for the collection of certain revenues for the general improvement fund. Section 13 of said chapter makes provision for the power to build bridges, to be paid for out of the general improvement fund of the city. Section 22 reads, that before the building of any bridge by the city council, estimates shall be made out by the city engineer of the city, and the building of the bridge shall be under the direction of the city. Section 30 of the same chapter provides that the city may exercise the right of eminent domain over property for bridges and the approaches thereto. On the other hand, it is

provided by § 21 of said chapter 89, that "the county commissioners of each county may, at the time prescribed by law for levying county taxes, levy a road tax on all the taxable property in their respective counties, except upon real estate in incorporated cities of over two thousand inhabitants." Section 1, of chapter 16, provides that the county commissioners shall determine what bridges shall be built and repaired at the expense of the county, and what by the road district, and if the county commissioners are of the opinion that a bridge is necessary, they shall proceed and estimate the expense, and determine in what manner it shall be built; also in § 2, that whenever it is necessary, the county commissioners shall make an appropriation to repair any bridge in the county. It certainly cannot be disputed that ordinarily a city has control over its own streets, and is empowered to keep them in good order and repair, and would be liable for any injury that might result to parties by reason of its neglect in keeping them in a safe condition, for certainly it is the duty of the street commissioner or the road overseer of the city to exercise exclusive control over the streets and bridges within its corporate limits, subject to the direction of the city authorities; all improvements and repairs upon the streets are paid out of the city funds. The county usually has no control over the streets, is not liable for damage to persons injured thereon by reason of their being in an unsafe condition, and is not compelled to pay any part of the expenses for opening, grading or maintaining the same.

But it is claimed that there is a special exception to this general rule in this case; first, because the county is a part owner of the bridge; second, on account of its size, and general usefulness to the people in the county. Probably the county has the power to construct and maintain a bridge within the limits of a city, even when it becomes a part of its streets; or it may, with the concurrence of the city authorities, build and keep in repair such a bridge, but it is quite a different proposition that because of such aid in building the bridge, the county is compelled to keep it in repair. It is one

**3. County, when not bound to maintain bridge.** thing to have authority to render voluntary assistance in such matters, and quite a different one to be obliged to furnish compulsory aid. (*McCullom v. Black Hawk Co.*, 21 Iowa, 409.) The fact that they were joint owners of the bridge does not make them necessarily responsible for the repairs of the same.

The fee of all streets in the cities of Kansas is in the county, but it would not be contended for a moment for that reason the county would be compelled to keep them in repair. A county might expend large sums of money in laying out and opening a road, and afterward the portion of its territory through which the road ran might be incorporated as a city of the first class; the county, by such ownership and on account of the money expended on the road in that case, would not be compelled to repair and maintain the same when it becomes the street of a city.

The claim that on account of the size of the bridge the county should assist in its maintenance, has no force in this **4. Bridge, not maintained by county.** state. A number of the states provide by statute, and it is a reasonable provision, that where the bridge is above a certain size, then, although it is a portion of a city, it is to be erected and maintained either wholly or in part at the expense of the county. The simple fact that it has been deemed necessary to enact such legislation, is some evidence that in its absence it would be the duty of the city to erect, construct and repair the same without the aid of the county. At common law the duty of repairing public bridges rested upon the county, when no other body was charged therewith, but this common-law responsibility of counties has never been approved in the United States, and the provision of our statute must be our guide, and the apparently contradictory statutes may be reasonably construed **2. Bridges, built by county, when—by city, when.** that all bridges in the county are to be under the control of the county commissioners, and built and maintained at the expense of the county, except those bridges only that are within the limits and form a part of the streets of certain cities; they are to be repaired and

maintained by the cities within whose limits they are situated. Of course this rule would not apply where there is an express statutory provision to the contrary.

The plaintiff, to support its position, evidently relies upon the case of *Comm'rs of Wyandotte Co.* v. *City of Wyandotte,* 29 Kas. 431. The facts upon which that decision rests are unlike the averments of this petition. In this case the river flows through the city of Topeka, and the bridge is wholly within the limits of the city, and constitutes a part of one of the principal streets. It never has been the exclusive property of the county, and for years has been under the control of the city. In the case cited, this river divides two cities, Wyandotte and Kansas City, Kansas; the bridge was not entirely within either of the cities, possibly not all within both; it had been built wholly by the county, and been under its control. That opinion was written with reference to the special facts in that case, and would not be entirely applicable as authority in the matter before us.

There is another weighty reason why this bridge should be under the exclusive control of the city of Topeka; as a matter of policy and convenience to the public it should be in the possession of one municipal body; there should be unity in its control. If the joint possession and control was placed in the county and city, it might lead to a conflict of jurisdiction. Where two distinct sets of officers might have authority over the same bridge, they would be liable to have difficulty and dissension, and work at cross-purposes. The money they might expend would come from different sources, and might be expended for different objects. It is not the policy of the law to invite contention and strife about a thoroughfare so useful to the public as this bridge.

5. Unity in control.

The argument made in plaintiff's brief, because the inhabitants of the county are greatly benefited by the bridge, and use it almost daily, it should be compelled to assist in its repairs, is not worth much. Its absurdity is shown by carrying it one step further; it is stated in the petition that the citizens of adjacent counties also use the bridge daily in passing and

repassing; it would not be thought of, that for the reason it was of advantage to the citizens of other counties, they should share in the expense of maintaining the bridge. We cite as authorities tending to support the views herein expressed: *City of Eudora v. Miller*, 30 Kas. 494; *Jansen v. City of Atchison*, 16 id. 358; *McCullom v. Black Hawk Co.*, 21 Iowa, 409; *Town of Mechanicsburg v. Meredith*, 54 Ill. 89.

For the reasons given herein, we believe that the demurrer to the petition should have been sustained. We therefore recommend that this cause be remanded, and the court directed to render a judgment for plaintiff upon demurrer.

By the Court: It is so ordered.

All the Justices concurring.