VALLEY TOWNSHIP, IN OSBORNE COUNTY, V. THE KING
IRON BRIDGE AND MANUFACTURING COMPANY.

No. 116.

1. TOWNSHIP—*Bridge Contract—Limit.* Township officers may contract for the construction of a township bridge on a public highway in their township when they have funds, obtained from road taxes or otherwise, which may be so appropriated, even though the cost of such bridge exceeds $200.

2. OFFICE AND OFFICERS—*Presumption of Authority.* In the absence of proof to the contrary, it will be presumed that public officers are in the rightful performance of duty.

MEMORANDUM.— Error from Cloud district court; F. W. STURGES, judge. Action by The King Iron Bridge and Manufacturing Company against Valley Township, in Osborne county, on à bridge contract. Judgment for plaintiff. Defendant brings the case to this court. Affirmed. The opinion herein, filed July 9, 1896, states the material facts.

*David Ritchie*, for plaintiff in error.

*Robinson & McBride*, for defendant in error.

The opinion of the court was delivered by

GARVER, J. : The township officers of Valley township, Osborne county, on February 17, 1888, entered into a contract with the King Iron Bridge and Manufacturing Company for the construction by said company of an iron bridge on a public highway in said township where the same crosses Wolf creek, for which said township was to pay $400. The bridge was subsequently constructed according to contract, being completed June 5, 1888. Thereafter, warrants for $400 were duly drawn on the treasurer of said township and delivered to the bridge company. Payment of the warrants having been refused, the

present action was brought in the district court of Osborne county to recover the amount thereof. The place of trial was changed to Cloud county, and a trial there had, upon an agreed statement of facts, which resulted in a judgment in favor of the bridge company. Various irregularities existed in the mak ing of the contract, which, however, it is conceded were cured by the subsequent action of the township board, if such board had authority in the first place to make the contract.

It is contended that the township board was without power or authority to bind the township by any contract which it might enter into for the construction of a bridge costing more than $200; that, consequently, the action of the township board was illegal and void. This proposition, which is the only one we are called upon to consider, is stated in the brief of counsel thus: "Did the township board have the power, in any event, to bind the township by a contract to build a bridge, the cost of which is more than $200?" The answer to this question determines the controversy. In support of this contention counsel cites *Salt Creek Township v. Bridge Co.*, 51 Kan. 520, and *Pleasant View Township v. Shawgo*, 54 id. 742. At first blush those decisions seem to support the proposition contended for; but they are, we think, on careful examination, distinguishable from this case, and are based upon facts entirely different from those now under consideration. In the case first cited the township board, as well as the bridge company, assumed to act under the authority conferred by a vote of the electors of the township on a proposition submitted to them for the voting of bonds to build the bridge. The township records showed that the proposition had been defeated, and other public records of the county

and township disclosed the fact that the township had already exceeded the limit fixed by statute for any bonded indebtedness to be created by it. Moreover, the contract relied upon in that case specially provided that the bridge should be paid for by township bonds. There was no claim that the contract entered into was authorized by any other statute than the one providing for the voting and issuing of bridge bonds, and none other was considered by the court.

In *Pleasant View Township v. Shawgo*, the only general statute considered was chapter 16 of the General Statutes of 1889, and the court very properly held that it conferred no power upon the township board to bind the township by a contract for the construction of a bridge costing more than $200. The question seems to have been presented and determined without reference to other statutes which authorized the construction of bridges by townships under certain conditions which evidently did not exist in that case.

In the case at bar, it may be conceded that, under said chapter 16, township officers are not authorized to contract for the building of a bridge the cost of which exceeds $200; not, however, because the statute prohibits the incurring such a liability by township officers, but rather for the reason that no such power is conferred, either expressly or by fair implication. Such officers, having only limited powers, can act only in the cases and under the circumstances prescribed by law. That act, as we view it, is a limitation upon the power of the county commissioners, putting upon them restrictions as to the kind of bridges for which the county money may be expended. There is nothing in its provisions which by any required or necessary construction makes the county officers in all cases the exclusive judges of what

bridges shall be built, or which affirmatively places any prohibition upon the township officers. Other statutes pertaining to bridges show very clearly that no such exclusiveness was intended by the legislature. By subsequent acts the legislature authorized the voting of bonds by a township for the purpose of building bridges therein, without a limit as to cost, except that the bonded debt should not exceed a certain per cent. of the taxable property of the township. (Gen. Stat. 1889, ¶ ¶ 413–421.) Under their provisions, a township may vote bonds and construct bridges without regard to the action of the county commissioners.

At the same time, by another statute provision was made for levying and collecting a road tax on all the taxable property in the county or in any township. (¶ ¶ 5494, 7084.) Such tax may be levied for the benefit of any one township, independently of the rest of the county. How the tax so collected may be used is also specially provided for, as follows:

"The township treasurers shall receive from the county treasurers the road taxes paid within their respective townships, and the same shall be appropriated to the building of bridges and the repairing of roads within their respective townships, and the purchase of the requisite number of scrapers and plows for repairing the roads." (Gen. Stat. 1889, ¶ 5499.)

The township officers have the general care and charge of public roads in their respective townships. Necessary bridges are a part of the highway, their construction and repair, within the means provided, falling within the proper and legitimate duties of the township officers. (*Comm'rs of Shawnee Co. v. City of Topeka*, 39 Kan. 197.) The building of a bridge thereon may be an absolute necessity for public travel, and its absence be a virtual obstruction of the highway. Cer tainly, in such case, if the township has funds derived

40—4 KAN. APP.

from road taxes or otherwise which may be appropriated to the building of a bridge, the township officers may so use them, although in so doing they expend more than $200. The only limit upon their authority to appropriate and expend money on a public highway is the amount of the fund provided for that purpose. (*Uhl v. Township of Douglass*, 27 Kan. 80.)

It necessarily follows from what has been said that the question propounded by counsel for the township must be answered in the affirmative. The record in this case does not show that the township board of Valley township was not acting within its legitimate authority, as recognized in this opinion, at the time it contracted for the building of the bridge in question. In the absence of an affirmative showing, it will be presumed that the officers were in the rightful performance of duty, and that the conditions existed which authorized them to act as they did.

The judgment is affirmed.

All the Judges concurring.