THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF CLOUD v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MITCHELL.

No. 15,034   (90 Pac. 286.)

SYLLABUS BY THE COURT.

HIGHWAYS—*County-line Bridge—Maintenance.*  A bridge built on a road located on the line dividing two counties, from funds supplied in part by private subscriptions and the remainder by a township of one of the counties, which, being of public utility, is accepted, adopted and used by the public as a part of the highway over the stream it spans, is a part of the highway, and expenses incurred in its repair are, by the provisions of chapter 109 of the Laws of 1874 (Gen. Stat. 1901, §§ 6050-6052), to be borne jointly by the two counties.

Error from Cloud district court; WILLIAM T. DILLON, judge.  Opinion filed May 11, 1907.  Affirmed.

Cloud County v. Mitchell County.

*Fred W. Sturges, jr.,* county attorney, and *Fred W. Sturges, sr.,* for plaintiff in error.

*F. J. Knight,* and *Park B. Pulsifer,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The board of county commissioners of Cloud county prosecutes this proceeding in error to reverse a judgment rendered against it in favor of the board of county commissioners of Mitchell county for one-half the cost of repairing a bridge on the line between the two counties. The district court made findings of fact and conclusions of law as follow:

### "FINDINGS OF FACT.

"(1) The plaintiff, the county of Mitchell, and the defendant, the county of Cloud, are each duly organized counties of the state of Kansas, adjoining each other for a distance of eighteen miles, the west line of Cloud county being the east line of Mitchell county. Each of these counties have less than 20,000 population, the county of Cloud having the larger assessed valuation and paying the larger tax for the years 1902, 1903 and 1904.

"(2) There has been a public highway on the line between the counties of Cloud and Mitchell which has been constantly in use as such for about twenty years prior to the commencement of this action. Mitchell county laid out and established said road twenty-five feet wide on the west side of, and extending to, the said county line on November 8, 1884, and Cloud county laid out and established twenty-five feet wide on the east side and extending to the line on July 10, 1885, thus making a fifty-foot road upon the line.

"(3) The Solomon river crosses this county line, and across this river, where the line crosses, a bridge, costing $5000, was built in 1884, $3000 of which was paid by Logan township in Mitchell county, and $2000 was raised by private subscription. Neither county paid any portion of the cost of construction of the bridge.

"(4) About the year 1900 the county of Mitchell rebuilt one of the approaches to the bridge, at a cost of about $1000, but Cloud county has never expended any

money, either in the building or repairing of the said bridge, nor in any way adopted or recognized it as a county bridge prior to the commencement of this action.

"(5) At the time the bridge in question was built that part of the highway which is in Cloud county had not yet been established and laid out as such, and the bridge was built, evidently with the purpose to have it all in the road as it was then laid out, but upon a careful survey it has been ascertained that about twenty-six inches of the bridge at the south end and about eleven inches at the north end is in Cloud county.

"(6) The bridge in question became very much in need of repair just prior to the January, 1903, meeting of the board, and the county commissioners of Mitchell county made an estimate of the cost of repairing it, and on January 10, 1903, let the contract for the repairing of the bridge to J. F. Wayland & Co., for the sum of $1595, but without advertisement for bids. The bridge at the time was unsafe and dangerous and demanded immediate attention. A few days later, and after the new board for the year was organized, and about January 14, 1903, the chairman of the board of Mitchell county called up the board of commissioners of Cloud county by telephone and asked them to come up and go with them to look at the bridge, and on the following day, January 15, 1903, the members of the board of Cloud county went to Beloit and there joined the members of the board of Mitchell county, who procured rigs and took them to view the bridge.

"(7) After they returned to Beloit an informal talk was had between the members of the two boards, at which all admitted that the bridge was in need of repairs. It is claimed by the members of the board of Mitchell county that the members of the board of Cloud county gave them a promise that if Mitchell county would proceed with the repairs Cloud county would pay one-half the necessary expense. This the members of the board of Cloud county deny. It is not claimed, however, that any meeting was held or formal action taken as a board by the members of the board of either county with reference to said matters at that time or at any later time by the defendant at a board meeting, nor did the defendant board of commissioners

of Cloud county ever appoint a commissioner or other person to superintend the building or repairing of said bridge or do anything preliminary thereto.

"(8) The work of repairing the bridge was completed by J. F. Wayland & Co. prior to the meeting of the board in April, 1904, and at that meeting the plaintiff board accepted the work under his contract and paid him the amount called for by his contract, $1595, and also an additional sum of about $200 for extra work and material, but not included in the contract.

"(9) At the informal meeting and talk of the members of the two boards on January 15, 1903, after they had examined the bridge, and while they were at Beloit, the members of the defendant board were requested to assist in making the repairs which the bridge then needed, and were informed by the members of the plaintiff board that they would be called upon to contribute their share of the expense of making said repairs, but no promise was made by the defendant board or its members so to contribute.     At that time the members of the defendant board were advised that $1595 was the amount that would be necessary to make the needed repairs on said bridge.

"(10) After the repairs made by J. F. Wayland & Co. were completed and paid for by the board of county commissioners of Mitchell county, Kansas, and before the commencement of this action, the plaintiff prepared and presented to the defendant a properly verified bill for the sum of $797.50, being one-half of the amount promised J. F. Wayland & Co. by the plaintiff on their contract of January 10, 1903, for repairs of said bridge, and the defendant refused to allow or pay the same or any part thereof.     The order of the defendant board refusing to allow and pay said bill was made on the 5th day of October, 1904.

"(11) The repairs made by the plaintiff under its contract with J. F. Wayland & Co. were of the reasonable and actual value of $1595, and without them said bridge would have been dangerous and unfit for use. Said bridge is upon a constantly used public highway, near by and between the town of Simpson and a large flouring-mill; it is a necessary part of the said highway, without which said road could not be used, and is the only means by which the Solomon river can be

48—75 KAN.

crossed at or near the point where the bridge is located.

"(12) The assessed valuation of the taxable property of Cloud county for the year A. D. 1902, as returned by the assessors, was $3,819,916; a two-mill levy thereon would raise the sum of $7639.83. And such valuation for the year A. D. 1903 was $3,882,088, and a two-mill levy thereon would raise the sum of $7764.18. The value of the taxable property of Cloud county, Kansas, for the year A. D. 1904, as returned by the assessors for that year, was $4,296,244, and a two-mill levy thereon would raise a fund of $8592.48.

"(13) The custom of the defendant has been not to separate the funds, but carry the bridge and general funds together as one general fund, and no part of said fund raised by the tax of 1902 had been appropriated for bridge purposes up to January 15, 1903. Of the funds raised by the defendant by taxation for the year 1903, the total amount which had been appropriated for bridge purposes up to February 15, 1904, the time when the repairs sued for in this action were finished, was $3183. Prior to the April meeting, 1904, at which time the repairs on the bridge were accepted and paid for, the total amount which had been appropriated for bridge purposes was $3486.84. The total amount paid out by the defendant for the year 1903 for bridge purposes was $14,145.63, and for the same purpose defendant paid out in the year 1904 the sum of $8010.64."

"CONCLUSIONS OF LAW.

"(1) That sections 563 and 580 of the General Statutes of Kansas for 1901 apply only to cases where the question arises between the county and the road districts and townships, but do not apply to county-line roads.

"(2) That the bridge in question in this action is a part of the county-line road, and the repairing of said bridge is a part of the expense arising from the improvement of a portion of said road.

"(3) That the plaintiff and defendant are jointly liable for 'all expense, either in money, material or labor, arising from the improvement of any portion of such road,' and this is a statutory and not a contract liability, which the defendant cannot escape by refusing to adopt or recognize the bridge in question as

one that the county is under obligation to assist in keeping in repair. (Gen. Stat. 1901, § 6051.)

"(4) That the repairs which were furnished by the plaintiff being necessary, and the defendant having refused to join with the plaintiff in making them, the defendant is liable to the plaintiff for one-half of such necessary repairs so furnished by the plaintiff.

"(5) That the plaintiff is entitled to recover judgment against the defendant for one-half of such repairs so made by the plaintiff, and for the costs of this action."

Under the common law the obligation to keep bridges in repair rested upon the county, unless it could be shown that the duty had been specially imposed elsewhere. The common law in this respect does not obtain in Kansas, and the foundation of the defendant's liability must be discovered in some statute. (*Comm'rs of Shawnee Co. v. City of Topeka,* 39 Kan. 197, 18 Pac. 161.)

The defendant argues that the statute relating to bridges (Gen. Stat. 1901, ch. 16, arts. 1, 2) must control, and that, since the methods there pointed out were not pursued, it is under no duty to recognize the work done nor to contribute to its cost. The defendant fails to specify the section of either article of the chapter designated which would oblige it to repair a bridge erected under the circumstances described by the findings of fact. The statute referred to divides the counties of the state into two classes, and prescribes rules for the building and repairing of bridges supposed to be adapted to the peculiar needs of each. In one class, if the estimated cost of building a bridge is $200 or less the commissioners make no appropriation for it; in the other class, if the estimated cost is $100 or less it is built by the township or road district in which it is situated, and so on in reference to many details. The article governing Mitchell county states the procedure for the repair of bridges for the construction of which the county has contributed money

(such contribution having been made, of course, in pursuance of law), and provides for the building of bridges over watercourses which divide one county from another, but it does not meet the exigencies of this case. The other article, which governs Cloud county, outlines the duties of the county in respect to the repair of bridges which the county has built, provides for the building of bridges over watercourses which divide counties from each other, and provides for building bridges upon roads dividing one county from another, but contains nothing indicating an intention to fasten upon any county of the class legislated for responsibility for the repair of bridges of the nondescript character of the one involved in this suit.

This bridge was not built by either county; neither county contributed any funds for its erection; the watercourse which it spans does not divide the counties litigant; and it is not upon a road dividing counties of the class described in article 2 (Gen. Stat. 1901, §§ 580-593) so that the special procedure to which such counties are limited can apply. This being true, the liability of the defendant must be found in some other statute or it does not exist. The district court based its judgment upon chapter 109 of the Laws of 1874, which reads as follows:

"AN ACT relating to roads.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. That where a road is located on a county or civil township line, and by reason of any impediment, either natural or otherwise, any portion of such road suffers a deflection from such line not exceeding forty rods parallel distance, then for the purpose of improvement such road shall be deemed to be wholly on such line.

"SEC. 2. All expenses, either in money, material or labor, arising from the improvement of any portion of such road, shall be borne jointly by the counties or townships contiguous thereto, as the case may be." (Gen. Stat. 1901, §§ 6050, 6051.)

Section 1 of this act defines county- and township-

line roads to include roads suffering deflection not to exceed forty rods on account of natural or other impediments. Section 2 casts the expense of improving such roads—that is, county- and township-line roads, including those which are deflected—upon the contiguous municipalities. The findings of fact disclose a fifty-foot county-line road, one-half of which lies in each county. Although the original establishment was irregular, in that the two counties acted separately instead of jointly, the purpose of each at the time is clear, and the defect is shown to have been cured by user and lapse of time; therefore the only remaining question is if the bridge as a subject of improvement is a part of the highway.

The fact that the bridge was built by private subscription and by a township of one of the counties is immaterial, since it was of public utility and has been accepted, adopted and used by the public as a part of the highway over the stream. (*The State, ex rel. Roundtree, v. The Board of Commissioners of Gibson Co.*, 80 Ind. 478, 41 Am. Rep. 821; *State v. Campton*, 2 N. H. 513, and authorities cited in these opinions.) A statute of Kansas, like statutes of many other states, defines the words "highway" and "road" to include public bridges. (Gen. Stat. 1901, § 7342, subdiv. 5.) In many decisions of this court it has been recognized that a public bridge is a part of the highway. (*Uhl v. Township of Douglass*, 27 Kan. 80; *The State, ex rel., v. Lawrence Bridge Co.*, 22 Kan. 438; *Vickers v. Cloud County*, 59 Kan. 86, 89, 52 Pac. 73; *Coal Co. v. Sugar Loaf Township*, 64 Kan. 163, 165, 67 Pac. 630; *City of Eudora v. Miller*, 30 Kan. 494, 2 Pac. 685; *City of Rosedale v. Golding*, 55 Kan. 167, 40 Pac. 284; *Comm'rs of Shawnee Co. v. City of Topeka*, 39 Kan. 197, 18 Pac. 161; *Valley Township v. Bridge Mfg. Co.*, 4 Kan. App. 622, 625, 45 Pac. 660.) Generally a public bridge will be regarded as a part of the common highway over a stream unless in the application of some statute a

restricted meaning be indicated. (See 4 Words & Phrases Jud. Def. 3294.) Therefore the conclusion of the district court in respect to the scope of the act of 1874 is correct.

When the bridge in question became out of repair the duty of restoring it to a proper condition rested equally upon each county. When it became unfit for use and dangerous to the traveling public, so that, as the court found, it demanded immediate attention, it was the duty of both counties to give it such attention. The defendant having refused to cooperate, and having thus thrown the entire burden upon the plaintiff, it is liable to the plaintiff for its proportion of the expense necessarily incurred.

It appears from the findings that the repairs were properly made, that the amount paid for them was reasonable, and that the defendant had money in its bridge fund to pay its share. Therefore the judgment of the district court is affirmed.