THE ELECTRIC PLASTER COMPANY v. BLUE RAPIDS CITY TOWNSHIP.

No. 15,323. (96 Pac. 68.)

SYLLABUS BY THE COURT.

1. CONTRACTS — *Private Parties and Municipal Officers — Bond Issue—Public Policy.* An agreement between the owners of mills operated by water-power and the officers of a township providing that, if township bonds should be voted by the electors and the proceeds thereof used in rebuilding an important highway which was essential to the convenience of the public, and which when built would operate to close up a new channel of a stream that had been cut around the mills and mill-dam during a flood and turn the water back into the old channel of the stream and over the mill-dam, thus restoring the water-power lost by the cutting of the new

channel, the mill-dam owners would pay an amount equal to the interest on the bonds for a period of ten years, is not contrary to good morals or public policy.

2. ——— *Ultra Vires—Mutuality—Estoppel.* After the township has substantially performed its part of such agreement the mill owners cannot successfully defend against an action to enforce their liability upon the agreement on the ground that there was a want of power in the township board to make the agreement or that it was lacking in mutuality.

3. ——— *Duress.* The agreement cannot be regarded as having been made under duress because the officers of the township declined to call a bond election for procuring the means to rebuild the highway and close the new channel unless the mill owners would agree to share in the expense of the improvement and a refusal by the mill owners to accept the terms and sign the agreement would have placed them in an unenviable light with their patrons.

4. EVIDENCE — *Opinion Testimony.* Non-expert witnesses may give opinions of conditions and situations with which they are familiar but which it is difficult to embody in words or reproduce before the jury.

Error from Marshall district court; SAM KIMBLE, judge. Opinion filed April 11, 1908. Affirmed.

*H. A. Russell, J. G. Strong,* and *W. S. Glass,* for plaintiff in error.

*E. A. Berry,* and *W. J. Gregg,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Blue Rapids City Township to recover $229.60, with interest thereon, from the Electric Plaster Company, upon a contract between the township and the plaster company as well as two other companies not impleaded in this case. The contract recited in substance that these companies owned property on the Blue river, as well as certain proportions of the water-power provided by the river; that the flood of 1903 changed the channel of the river so as to render the water-power of the companies valueless, and also cut across an important

highway which formed the approach to the Blue river bridge and which was absolutely essential to the convenience and welfare of the people of the township. It was further recited that as the township intended to call an election to vote $15,000 in bonds, at a rate of interest not exceeding five per cent., for the purpose of rebuilding the highway, and that as the highway would probably close the new channel and turn the course of the river into the old channel, and thus restore the water-power owned by the companies, it was stipulated that if the contemplated bond proposition should carry, and the bonds were issued and the highway rebuilt so as to restore the water-power, the companies, including the Electric Plaster Company, would pay the interest on the $15,000 of bonds for a period of ten years, each company paying its proportion based on the amount of power which it owned. There was a further stipulation that the interest when due should become a lien on the property of each company, and that if default were made in the payment of the interest the township might enforce the lien in the manner provided by law. The bonds were voted and issued, and the highway rebuilt in such a way, it is said, as to restore the water-power, but the Electric Plaster Company, when called upon to pay its share of the interest on the bonds, refused payment. The township brought this action, alleging the contract, the voting and issuance of the bonds in accordance with the contract, the expenditure of the $15,000 realized by the bonds in rebuilding the highway, and that it was done in such a way as to turn the water back into its old channel and over the mill-dam, thus restoring the water-power and making the mill plant of defendant company usable and valuable, and that ever since the defendant has accepted, enjoyed and retained the benefits so obtained under the contract, but was attempting to repudiate the obligations of the contract.

The defendant answered that the contract was contrary to public policy, was without mutuality, and was

therefore void. Another defense was that defendant was coerced into the execution of the contract by the refusal of the township to call an election for the voting of the bonds unless it would enter into the contract, thus putting the defendant in bad repute with the citizens of the township and its patrons in case of a refusal. It was further alleged that misrepresentations were made by the township as to the amount of money on hand which would be used to restore the highway, and it was also alleged that the township had failed to complete the highway or to restore the water-power as the contract provided.

After a number of rulings made in settling the pleadings the case was tried before a jury, and the principal question submitted to the jury was whether the crib-dam and the highway had been constructed by the township so as to turn the water back into the old channel and substantially restore the water-power as the contract required. There was a general verdict in favor of the township, and a number of rulings made on the pleadings and during the progress of the trial are assigned as error.

Upon a ruling as to the sufficiency of the petition the defendant company raises the question of the validity of the contract. It is insisted that it was contrary to public policy for the township to contract with private parties providing that they should share in the expense of a public improvement, especially when the funds of the township to carry out its part of the agreement were to be largely obtained by the voting of bonds. It is said that the agreement operated as a bribe and as an inducement for the electors to vote in favor of the bonds. It does not appear that the agreement in question formed any part of the proposition submitted to the electors of the township. By voting and issuing the bonds the township was made liable for the interest, as well as the principal, and the agreement of the companies only extended to the repayment to the township of the interest which it was

bound to pay.  There is nothing to show that the agreement was in any way an issue in that election.  However, the bond election is not now in contest, and the result of it is not open to inquiry here.  Besides, the agreement is not in its nature and effect inimical to the public welfare.  No good reason has been advanced why the township and the defendant might not co-operate in making the improvement.  It subserved the interest of the township in restoring an important highway, alleged to be absolutely essential to the public convenience and welfare, and it also subserved the interest of the defendant and other owners of water-power as an embankment which formed the highway and turned the water into the old channel and over the dam, thus restoring the water-power.  Each was a legitimate purpose, and neither is contrary to statute or in conflict with good morals.  The defendant had a special and peculiar interest in the improvement, which formed a consideration for the contract and a justification for a division of the expense of the improvement. Contracts between municipal authorities and private parties which subordinate the public welfare to individual gain or which are against the public good are open to attack, but where they involve nothing inconsistent with good morals and sound policy no reason is seen why they may not be made.

It is not uncommon for individuals peculiarly benefited to unite with municipalities in making highways, digging drains, building bridges, and providing sites for schoolhouses and other public buildings.  In the recent case of *Cloud County v. Mitchell County,* 75 Kan. 750, 90 Pac. 286, involving the maintenance of a bridge, it developed that the bridge had been constructed in part by contributions from private parties, but the validity of the arrangement was not questioned. In *McClure v. Gulf Railroad Co.,* 9 Kan. 373, it was held that it was no offense against morals or public policy for citizens to enter into a contract with a railroad company to convey real estate to the company

on the condition that it would build a railroad and locate a depot at a certain place. (See, also, *Northern Kan. Town Co. v. Oswald,* 18 Kan. 336.) On the other hand it has been determined that an agreement with a railroad company that it would not build or maintain a depot within three miles of a certain point, regardless of public interest and convenience, tended to disable the company from the performance of its duty and was contrary to public policy. (*St. Jos. & D. C. Rld. Co. v. Ryan,* 11 Kan. 602, 15 Am. Rep. 357.) The same view was taken of a contract which restricted the location of a post-office to one place for individual benefit and personal gain. (*Woodman v. Innes,* 47 Kan. 26, 27 Pac. 125, 27 Am. St. Rep. 274.) We have an instance in this state where a town company donated a court-house and the block of ground on which it stood to a county upon the condition that the county-seat should be located there. (*Yoxall v. Comm'rs of Osborne Co.,* 20 Kan. 581.) The legislature established the state normal school at Emporia, but imposed the condition that a site of twenty acres adjacent to Emporia should be donated and secured to the state. (Laws 1863, ch. 57.) In *The State v. Elting,* 29 Kan. 397, where the validity of an election was involved, it was decided that the donation of property to a county by certain citizens of a town in case of the location of a county-seat at that town was not, of itself, improper or illegal. In disposing of the case it was said:

"As it is no offense against morals or public policy for the citizens of a place to offer material inducements for the location of a railroad, neither is it for them to offer inducements for the location of a county-seat. The history of every state is full of instances in which the location of a county-seat, a capital, or a public institution, has been secured by the offer of material inducements, and no case have we been able to find in which such location has thereby been declared void. In the contest over our own state capital it is a well-known fact that the city of Topeka offered to donate the present state-house grounds if the capital were located here." (Page 403.)

In Connecticut it was ruled that an agreement by owners of property fronting on a proposed street to indemnify the city for assuming the burdens of a new street was not contrary to public policy. (*Townsend v. Hoyle,* 20 Conn. 1.) In *Stilson v. The Board of Commissioners of Lawrence County,* 52 Ind. 213, it was determined that a promise of money upon the condition that the commissioners would bring the court-house back to the public square, from which it had been removed, was not antagonistic to public policy. Certain owners of property abutting on a street entered into a contract with a city, which was about to pave the street, providing that if the city would not disturb a row of trees in the middle of the street and would put curbstones around them for their protection they would pay the cost of the curbing, and it was held that the contract was legal and binding. (*Springfield v. Harris,* 107 Mass. 532.) In *Dishon v. Smith, County Judge,* 10 Iowa, 212, citizens of a town contesting for a county-seat offered to pay $500 toward the building of a bridge across a river, and also to contribute certain real estate to the county, if the county-seat should be located at their town by a vote of the electors of the county, and it was held that it did not invalidate the election. Judge Dillon, in discussing the question of public policy, after saying that any agreement to pay a corporation or its agents a premium for doing their duty or a contract which restrains or controls the judgment of public officers is invalid, remarked:

"But a promise by individuals to pay a portion of the expenses of public improvements does not necessarily fall within this principle, and such a promise is not void as being against public policy; and if the promisors have a peculiar and local interest in the improvement, their promise is not void for want of consideration, and may be enforced against them." (1 Dillon, Mun. Corp., 4th ed., § 458.)

(See, also, note to *State of New Jersey v. Mayor of Orange,* 54 N. J. Law, 111, in 14 L. R. A. 62.)

Besides a claim of a lack of power in the township to make the contract there is an additional contention that the promises between the parties lacked mutuality —that the township could not have been compelled to perform its obligation, and that, as it was not bound, neither was bound. As we have seen, the contract is not in violation of express statute, good morals or public policy. If it were assumed that there was a lack of power in the township officers or that specific performance of the promise made by the township could not be required, these could not now be regarded as material objections. The township has elected to perform its promise. The defendant has received and is enjoying the benefits of performance by the township and should not now be permitted to repudiate its obligation. As to the lack of mutuality, performance by the township has eliminated that question, and it is now too late for the defendant to rid itself of liability on the ground that performance of the promise could not have been compelled. (*Brown v. City of Atchison,* 39 Kan. 37, 17 Pac. 465, 7 Am. St. Rep. 515; *Town Co. v. Morris,* 43 Kan. 282, 23 Pac. 569; *City of Ellsworth v. Rossiter,* 46 Kan. 237, 26 Pac. 674; *Comm'rs of Hamilton Co. v. Webb,* 47 Kan. 104, 27 Pac. 825; *Water-Supply Co. v. Root,* 56 Kan. 187, 42 Pac. 715; *Railroad Co. v. Johnson,* 58 Kan. 175, 48 Pac. 847; *Coal Co. v. Sugar Loaf Township,* 64 Kan. 163, 67 Pac. 630; *Harris v. Gas Co.,* 76 Kan. 750, 92 Pac. 1123.)

The court rightly sustained the demurrer to the count of the answer attempting to plead duress. The averments therein—that the township officers declared they would not call an election to vote bonds to be used in building the highway until the defendant and its co-obligors would agree to assume a share of the burden, and that for defendant to have refused to sign the contract would have put it in an unenviable light and in bad repute with its patrons—do not amount to a charge of duress. The officers of the township could not arbitrarily decline the performance of official duty, and

if it was their duty to call an election to vote bonds they could have been compelled to make the call. Good reasons may have existed for the position taken by the township officers, and it was not duress to threaten to do that which they had a right to do. Duress is a condition of the mind produced by wrongful conduct, and it does not appear from the allegations that the failure to call a bond election until the parties to be benefited by the bond election had agreed to share in the expense of making the improvement was a wrong against the defendant. Besides, it is difficult to think that the refusal of the township officers to make the call for an election could have prostrated the defendant's officers with fear and deprived them of the exercise of will-power. There was no misrepresentation of the defendant, no threat made against it or its business; there was nothing but a refusal to call a bond election to provide the means to make an improvement especially beneficial to the defendant until it was willing to share in the expense of it. The influence which circuitously reached the defendant through its patrons may have been a sort of duress of public opinion, but whether it was actuated by fear of the public opinion or by a sense of duty the influence cannot be regarded as legal duress.

There were some objections to the testimony of witnesses as to the formation of the river banks and the character of the soil, wherein they gave their opinions of the stability of the ground, its liability to wash away, and also as to the performance of the work done. Much of the testimony to which there was objection was a relation of facts within the observation of the witnesses, and the opinions which they expressed were mainly of things which could not well be reproduced or made palpable to the jury, and as to these things opinions may be received. (*Telephone Co. v. Vandevort*, 67 Kan. 269.) The witnesses lived in the vicinity and were familiar with the soil and the effect of floods upon it. Some of the questions might well have been

submitted to witnesses with scientific skill, but it cannot be said that the defendant suffered any prejudice by reason of the testimony admitted or that its admission furnishes a ground for setting aside the verdict.

The remaining question—whether there has been a substantial performance of the contract by the building of the highway, which incidentally effected a reasonably permanent restoration of the water-power of the defendant—is one of fact, which the jury have determined. The general finding, based as it is upon what appears to be sufficient evidence, is conclusive on this review.

In none of the rulings complained of do we find any prejudicial error, and hence the judgment of the district court is affirmed.