Baird v. Shaffer.

---

No. 20,434.

JOSEPH A. M. BAIRD et al., *Appellees,* v. JOHN S. SHAFFER et al., *Appellants.*

SYLLABUS BY THE COURT.

1. WILL—*Contest—Evidence of Subscribing Witnesses—Not Conclusive.* The testimony of subscribing witnesses to a will may be overcome by any probative facts and circumstances admissible under the ordinary rules of evidence.

2. SAME—*Evidence Sustains Claim of Forgery.* The facts and circumstances relied upon to prove that the signature of the testatrix to a contested will was a forgery examined, and held sufficient to sustain a finding that the signature to the will was not genuine, and held sufficient to impeach and discredit the evidence of the attesting witnesses.

3. SAME—*Opinion Evidence.* Where the associated language used by a witness clearly indicated that he only intended to give his opinion as to the genuineness of a signature to a will, his inadvertent and improper statement of the ultimate fact to be determined by the court or jury, "It is not her signature, no sir," is not prejudicial error.

4. SAME—*Expert and Opinion Evidence.* Expert and opinion testimony as to the genuineness of handwriting is competent, and the credence and weight to be given to such evidence is for the determination of the jury.

5. SAME—*Evidence—Statements of Testatrix.* Where a will is contested as a forgery, it is competent and admissible (if not too remote in point of time) to prove that the testatrix had repeatedly said that she had made no will, that she said she intended to bequeath her property to her son and grandchildren, and to prove that she called a scrivener and witnesses shortly before her death for the purpose of making a will, and that she then deferred making it, saying, "I do not want to do it now; I will wait until I feel better."

6. SAME—*Expert witnesses—Instructions.* Instructions requested by defendants covering the credence and consideration to be attached to the evidence of expert witnesses examined, and held to be an inaccurate statement of law and properly refused, and held that the law on this subject was properly stated in an instruction given by the court.

Appeal from Smith district court; RICHARD M. PICKLER, judge. Opinion filed November 10, 1917. Affirmed.

*I. M. Mahin, F. W. Mahin, E. S. Rice, W. S. Rice, A. W. Relihan,* and *T. D. Relihan,* all of Smith Center, for the appellants.

*L. C. Uhl,* and *L. C. Uhl, jr.,* both of Smith Center, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This action was brought to contest the purported last will and testament of the late Mary A. Baird, of Smith county. The plaintiffs were some of her heirs at law. Some of the defendants were beneficiaries under her alleged will; other defendants were brought in that their rights might be adjudicated.

The will was attacked on the ground that the signature to it was not the genuine signature of Mary A. Baird, but a mere forgery.

A special question of fact was propounded to and answered by the jury which had been called to assist the court:

"Question: Did Mary A. Baird, now deceased, sign the instrument . . . purporting to be her last will and testament? Answer: No."

The judgment in part reads:

"The court thereupon adopted the finding of the jury as its own and finds that the instrument purporting to be the last will and testament of Mary A. Baird is not in fact such last will and testament and that it should be and is hereby so decreed."

Baird v. Shaffer.

There were three witnesses to the will and they all testified positively that Mary A. Baird had signed the will in their presence, and that they signed it as witnesses at her request, in her presence, and in the presence of each other.

The plaintiffs' evidence discrediting the will was partly that of expert testimony and opinion evidence which tended to prove that the signature to the will was not genuine, that it differed materially from other signatures of Mrs. Baird the authenticity of which was admittedly genuine or sufficiently proved.

Defendants' first contention is thus stated:

"It is our contention that the testimony of the subscribing witnesses to a will can not be disregarded by the jury where they swear positively, as all of the witnesses did in this case, that they saw the testator sign the will, unless such witnesses be impeached. It is also our contention that the positive testimony of the three subscribing witnesses can not be overthrown by mere opinion evidence in the absence of evidence tending to show corruption or dishonesty on the part of such attesting witnesses."

The testimony of attesting witnesses to a will may be overcome by any competent evidence. (*Ginter v. Ginter,* 79 Kan. 721, 738, syl. ¶ 5, 101 Pac. 634; 2 Wigmore on Evidence, §§ 886, 1514.) Such evidence may be direct or it may be circumstantial; and expert and opinion evidence is just as competent as any other evidence. Indeed, where the signature to a will is a forgery and where the attesting witnesses have the hardihood to commit perjury, it is difficult to see how the bogus will can be overthrown except by expert and competent opinion evidence tending to show that the pretended signature is not that of the testator but spurious. The rule contended for by appellants would frequently baffle justice and give judicial countenance to many a high-handed fraud. Appellants invoke the rule announced in *Healer v. Inkman,* 89 Kan. 398, 131 Pac. 611:

"While a jury is at liberty to disbelieve the uncontradicted testimony of a witness which is deemed to be unreasonable and untrue it is never justified in arbitrarily and capriciously disregarding unimpeached evidence." (Syl. ¶ 1.)

The rule is sound but inapplicable. Here many circumstances were shown which would justify a court or jury in deciding that this will was spurious, and consequently that the attesting witnesses were untruthful. There was the curious

incident that notwithstanding there had been no suggestion of a will by Mrs. Baird until her husband died, after his death John S. Shaffer, one of the principal beneficiaries, promptly appeared before the probate judge with a pretended will of Mrs. Baird in his custody. His interview with the probate judge was significant. Upon the declaration of the latter that the will "was n't worth a damn," Shaffer said, "Maybe I have the wrong will." The probate judge said: "For God's sake you have n't got another one have you?" Shaffer replied: "Yes, I got one up home and I will go and get it." That pretended will never afterwards appeared, and the one whose genuineness is in question here is another document. Moreover, Shaffer denied this incident, and swore that the first instrument he presented to the probate judge was the same one which is the subject of this lawsuit. Some time after the date of the will in question, which was October 7, 1913, Mrs. Baird was repeatedly heard to declare that she had made no will, and that she desired to make one. She had gone so far as to advise her banker of her proposed disposition of her property, and planned to make her will on February 16, 1914, two weeks before her death. She invited this banker and others to her abode. This banker testified:

"It was sometime in February possibly about February 16th, 1914, that we were down to see Mrs. Mary A. Baird. When we were there she stated—Mrs. Mary A. Baird said she did not have a will, and had called us down to make her will, that day. . . .

"I had a conversation with Mary A. Baird more than once, in the presence of other parties, with reference to the disposition of her property. . . . In that conversation she said that she wanted all of her property to go to her two grandchildren and her feeble-minded son. I do not know whether she named him at that time or not, but we all knew who she meant. She also said at that time that she wanted—using her words—she said: 'I want you men to see that it is divided up that way.' I asked her particularly if she wanted the property divided equally amongst the three children, and she said, 'Yes, that is the way I want it.' I told her if she wanted her property divided that way that she should make some disposition the way she wanted it to go, and unless she did dispose of her property as she wanted it, that it would not be disposed of as she wanted it to be, or in substance those words; and her reply was: She said she wanted Mr. W. F. Hicks to be present, and that she had sent for him to come, and waited for a while longer for Mr. Hicks. He had to come in from the country. He did not come, and I spoke to her about writing up a will for a disposition of her property; that was what we

Baird v. Shaffer.

men were there for that day, and she said that she was so tired; she said, 'I am so tired now, I do not want to do it just now; I will wait until I feel better.' When I asked her about wanting me to write up her will, she told us she would wait until she got better, that she wanted Mr. Hicks present. That she wanted it written up by disinterested persons."

Mrs. Baird was shown to be a woman of intelligence and business sagacity and conducted her affairs methodically and kept a bank account. She had accumulated considerable property. The estate disposed of by the contested will approximated $30,000 in value. Yet the will upon which appellants rely was drawn by a common laborer who had never had experience in writing wills and who had never seen a will. One of the principal beneficiaries under the pretended will was a woman whom the testatrix disliked so much that she did not want to die in her house. Her dislike and distrust of Shaffer, the other principal beneficiary, were also proved. In addition to much expert and opinion evidence that the signature to the will was not that of Mrs. Baird, there were submitted to the jury photographically enlarged copies of genuine signatures of Mrs. Baird and of the signature to her purported will. The difference between the admittedly genuine signatures and the signature to the will was so obvious that any juryman—any layman of common intelligence and ordinary capacity for observation—would readily discover it. (*Joseph v. National Bank,* 17 Kan. 256.) One witness for plaintiffs testified that one of the attesting witnesses told him privately that the will was a "frame up." These and other circumstances which the trial court and jury had a right to consider tended as effectually to impeach and discredit the evidence of the attesting witnesses as would the formal presentation of witnesses who would avow that the attesting witnesses had bad reputations for truth and veracity. Impeaching witnesses may themselves be unworthy of belief, but the array of circumstances marshaled in this case to prove that the will was a forgery served quite as well for purposes of impeachment. All the probative facts and circumstances arrayed by plaintiffs could not readily have been formulated with sufficient cleverness to cause justice to miscarry. The court holds that the plaintiffs sufficiently maintained their cause by competent evidence to warrant the trial court in giving judgment in their behalf; and this, of course, had the effect of impeaching the attesting witnesses,

which fully answers appellants' contention that the evidence of attesting witnesses can not be disregarded unless they are impeached. The contention itself is not altogether correct. (*Cobe v. Coughlin,* 83 Kan. 522, syl. ¶ 2, 112 Pac. 115.)

One error urged is based upon the evidence of the probate judge who, it is said, was permitted to testify to the ultimate fact. The abstract contains part of this evidence, the counter-abstract contains some more of it:

"It is not her signature, no sir. I have examined the signature to the purported will several times and compared it with the signatures that I saw Mary A. Baird write and in my opinion the signature to the will was not made by the same person.

"I saw her sign her name there in three different places. I know her signature. . . . I have examined the signature to the purported will. I have examined it several times; also compared it with the signatures that I saw Mary A. Baird write, and have formed an opoinion as to whether or not the signature to the purported will was made by the same person that signed the guardianship petition and bond, and in my opinion the signature to the will was not made by the same person."

It was improper for the witness to say: "It is not her signature, no sir." But the additional words of the witness clearly showed that he was merely giving his opinion, and it was shown that he was sufficiently familiar with Mrs. Baird's authentic signature to qualify as an opinion witness. (See, also, *Ort v. Fowler,* 31 Kan. 478, 485, 2 Pac. 580; *Holmberg v. Johnson,* 45 Kan. 197, 199, 25 Pac. 575; *Plaster Co. v. Blue Rapids Township,* 77 Kan. 580, syl. ¶ 4, 96 Pac. 68; 11 R. C. L. 562, 620; 1 Wigmore on Evidence, § 570.)

It should not be forgotten that the jury in this case served only in an advisory capacity, and, while they might be led astray by a dogmatic assertion of the ultimate fact, the trial judge would not disassociate this statement of the witness from the rest of his evidence. Read in connection with the rest of the witness's testimony the criticised language was not serious. (Civ. Code, § 581.)

Counsel for defendants quote from many decisions of other courts inveighing against the testimony of expert witnesses. In this jurisdiction, however, such evidence is admissible, and the credence to be given to it is for the discriminating good sense of the triers of the facts to determine. (*A. T. & S. F. Rld. Co. v. Thul,* 32 Kan. 255, 261, syl. ¶ 3, 4 Pac. 352; *Yard v. Gibbons,* 95 Kan. 802, 811, 812, 149 Pac. 422.)

Baird v. Shaffer.

Another error assigned is based upon the admission of evidence giving the substance of Mrs. Baird's conversations before her death to the effect that she had not made a will, and narrating her expressed wishes about the disposition of her property; and the circumstances narrated by the banker who attended her for the purpose of making or witnessing her will. Appellants concede that such statements would be admissible if the attack on the will were based on undue influence. (*Mooney v. Olsen,* 22 Kan. 69.) No logical difference can be discovered between an issue of undue influence and an issue of fraud or forgery to withhold the aid of such evidence in ascertaining the facts. (*Durant v. Ashmore,* 2 Rich. Law. [S. C.] 184.) Unless too remote in point of time, such evidence is admissible. (*Schnee v. Schnee,* 61 Kan. 643, 647, 60 Pac. 738.)

Complaint is made of the trial court's refusal to give the jury certain instructions touching the consideration to be attached to the evidence of expert witnesses. These requested instructions have been examined: They were prepared upon the theory contended for by defendants here on appeal. They did not accurately state the law. The court correctly and sufficiently instructed the jury on this point, as follows:

"The testimony of an expert witness is to be considered and weighed, not exclusively, but as and with the other evidence like any other testimony and should receive just such weight and credit as the jury deem it entitled to when weighed in connection with all the other evidence, including the circumstances; and as to whether or not when so taken and considered in connection with the other evidence it is justly of sufficient weight to establish or disprove any matter, if any, sought to be so established or so disproved is for the jury to determine."

Nothing approaching prejudicial error is discernible in the record, and the judgment of the district court is affirmed.