JAMES McGREW v. M. W. STEWART, *as Treasurer of Wyandotte County, et al.*

1. CITY—*Extension of Limits—Highway Becomes a Street.* The limits of a city of the first class were extended so as to embrace territory through which a public highway existed. After the annexation, the mayor and council caused a sidewalk to be built along the highway and assessed the cost of the same against the abutting property. In an action to enjoin the collection of the special tax, it is *held,* that after the annexation the highway was impressed with the character of a street, and became subject to the exclusive control of the city authorities, and to the liabilities and servitudes of all other streets within the city.

2. ——— *Collateral Attack.* In such an action, the proceedings annexing the territory to the city, and which appear to be regular on their face, are not subject to attack.

*Error from Wyandotte District Court.*

ACTION by *McGrew* against *Stewart,* as county treasurer, to enjoin the collection of an assessment made on plaintiff's land. January 30, 1890, there was a judgment sustaining the assessment, and plaintiff comes to this court. The opinion states the facts.

*McGrew & Watson,* for plaintiff in error:

1. Under ¶ 558, Gen. Stat. of 1889, no sufficient petition for the construction of said sidewalk was ever presented to the city council, and the defects in the petition proceeded under were jurisdictional and fatal.

2. No estimate of the cost was made under oath by the city engineer and submitted to the council, as required by law. See ¶ 570, Gen. Stat. of 1889; *Hentig v. Gilmore,* 33 Kas. 156.

3. Plaintiff's land was unplatted, was more than five acres, and was not entirely surrounded by platted territory, and therefore could not be taken into, and is not properly within, the limits of defendant city or subject to city taxation or special assessments. The evidence shows that plaintiff's land is an unplatted tract of $5\frac{1}{16}$ acres, and that the same is not

wholly surrounded by platted territory, and that plaintiff made a protest against the taking of his land into said city.

In §1, chapter 99, Laws of 1887, it is provided that

"No unplatted territory of over five acres shall be taken into said city against the protest of the owner thereof, unless the same is circumscribed by platted territory that is taken into said city."

Under the evidence, we think plaintiff's land cannot be regarded as within the city or as subject to any special assessments levied.

4. The mere extension of the city limits did not, *ipso facto*, convert said county road into a street within said city, subject to urban as distinguished from suburban servitudes, and plaintiff's land abutting on said highway is not liable to special assessments for sidewalks. The public obtains a mere easement to the land of a county road, and the landowner himself still remains the owner in fee, and of everything connected with the land not necessary for the public use. *Comm'rs of Shawnee Co. v. Beckwith,* 10 Kas. 603; *Roberts v. Comm'rs of Brown Co.,* 21 id. 247. See, also, Gen. Stat. of 1889, ¶¶ 4008, 4013; *Comm'rs of Franklin Co. v. Lathrop,* 9 Kas. 453; *A. & N. Rld. Co. v. Garside,* 10 id. 552; *Randal v. Elder,* 12 id. 257; *Heiple v. City of East Portland,* 8 Pac. Rep. (Ore.) 907.

Additional burdens imposed require additional compensation, and if the city makes use of the highway for a different purpose than was originally intended, or makes city improvements thereon, it does so at its peril. *Indianapolis &c. Rld. Co. v. Hartley,* 67 Ill. 439; *Board of Trade Telegraph Co. v. Bartlett,* 107 id. 507; *Kincaid v. Gas Co.,* 124 Ind. 577; *Broomfield et al. v. Calkins,* 62 N. Y. 386; *Sterling's Appeal,* 111 Pa. St. 35, 56 Am. Rep. 246; *In re City of Buffalo,* 30 N. E. Rep. 233.

*Buchan, Freeman & Porter,* for defendant in error the city of Kansas City:

In the case at bar, the plaintiff seeks to set aside the decree and findings of the court in the proceedings had for the an-

nexation of territory, which cannot be attacked in a collateral manner. *Paine v. Spratley*, 5 Kas. 525; *Entreken v. Howard*, 16 id. 553, 554; *Burke v. Wheat*, 22 id. 725; *Rowe v. Palmer*, 29 id. 340, 341; Dill. Mun. Corp., § 43*a*.

The annexation of territory to a city converts the established roads and highways into streets and avenues. See Gen. Stat. of 1889, ¶¶ 5488, 5489; ¶ 555, subdiv. 43; ¶ 679, art. 8; Const., art. 12, § 5. See, also, Elliott, Roads and St., pp. 312, 313; *Comm'rs of Shawnee Co. v. City of Topeka*, 39 Kas. 200, 202, 203; *Jansen v. City of Atchison*, 16 id. 358; *City of Eudora v. Miller*, 30 id. 494; 15 Am. & Eng. Encyc. of Law, 1017, 1018; Dill. Mun. Corp., 4th ed., §§ 676, 677, 680; *Steele v. City of Newton*, 41 Kas. 512.

The opinion of the court was delivered by

JOHNSTON, J.: This action was brought to enjoin the collection of an assessment made upon the plaintiff's land for the construction of a sidewalk on a street upon which the land abutted. The plaintiff has been the owner of the land since 1871, and along the south side of the same there has been for at least 20 years a highway. Although it lay close to Kansas City, the land was outside of the city limits until January, 1888, when the limits of the city were extended so as to include the plaintiff's land. The road, or street, upon which the land adjoined was variously known as the "Quindaro road," "Quindaro boulevard," and "Quindaro avenue." After appropriate proceedings, the city required the building of a sidewalk on this street, and it was constructed along the south side of the plaintiff's property, at a cost of $313.20, for the payment of which a special assessment was made upon the abutting land. After the special assessment had been extended upon the tax roll, and the county treasurer was proceeding to collect the same, this action was begun, with the result that the special tax was sustained and the injunction denied.

The principal contention is that Quindaro avenue, or boulevard, upon which this sidewalk was constructed, is not a street,

as such, within the city, for the improvement of which special assessments can be levied upon plaintiff's land. Plaintiff urges that the annexation of the adjoining territory did not convert the highway running through the same into a street subject to the control of the city, and to the servitudes which may be imposed upon streets within a city. Prior to the extension of the city limits, Quindaro street was a county road, and the plaintiff, who was the owner of the fee to the middle of the road, never dedicated or conveyed the same to the city for use as a street, and the city never attempted to condemn or otherwise acquire the fee of the highway for street purposes by making compensation to the owner thereof.

We are of opinion that the highway became subject to the control of the city, and to such urban servitudes as may be 1. City—extension of limits—highway becomes a street. imposed in cities of that class, as soon as the territory through which it ran was annexed. The legislature has full power to provide for the establishment and control of highways within and without the limits of cities. Outside of cities, the control of the same is placed in county and township officers, while within the city absolute and undivided control is given to the city officers. It is true that the fee of a county road is in the adjoining landowners, while the fee to the streets is in the county, in trust for the uses and purposes of the public. It is also true that the abutting owner has greater rights and privileges in a county road, where he owns the fee, than he does in the streets of a city, where the fee is elsewhere. In either case, and wherever the fee may be, the easement is in the public, for its use and benefit, and the control definitely fixed in certain officers. In the nature of things there can be no divided control of the streets within the limits of a city, and in the whole course of legislation there is nothing indicating a different treatment or control of the highways and streets brought in by annexation and those which were in the city previous to annexation. (*City of Eudora v. Miller*, 30 Kas. 494; *Comm'rs of Shawnee Co. v. City of Topeka*, 39 id. 200.) Full power is given by the legislature to annex adjoining ter-

ritory, and both platted and unplatted territory may be added.
But whether platted or unplatted, the act of annexation can-
not be held to operate as a vacation of any existing highways
on the added territory.   Nothing in the statutes declares or
implies that annexation shall operate to vacate the highways,
nor indeed do counsel for plaintiff claim that such would be
the effect.   If the highways existing in the annexed territory
are not extinguished by the annexation, they necessarily are
subject to the laws applicable to public ways within cities.
As soon as such highways are brought within the limits and
jurisdiction of the city, the supervision of the city officers is
exclusive.   Afterward they are impressed with the character
of streets, and the city and its officers owe to the public the
duty to keep them in a safe condition for public use in the
usual mode, and are liable for injuries resulting from a neg-
lect to perform this duty.   Power is conferred upon the
mayor and council to require the improvement of all the
public ways within the city, and the construction of sidewalks,
and in order to carry it out they are authorized to levy and
collect special taxes upon the abutting ground which is bene-
fited by the improvement. (Gen. Stat. of 1889, ¶¶ 555–559.)
No exception is made of such public ways as have been
brought in by annexation and which were formerly under
the control of the county and township officers.   Sidewalks
may be as necessary on such streets as upon any other, and
the benefits to the abutting property are as great in one case
as in the other; and therefore, as the property is within the
jurisdiction of the city, no good reason exists why those
benefits should not be assessed upon the property which
receives the benefits.   It is true that before annexation
the fee of the way was in the owner, and that after it was
brought within the limits and jurisdiction of the city the fee
was in the county for the use of the public; but by coming
into the city the plaintiff's liabilities are enlarged and the
servitudes on his property extended.   The annexation places
him on an exact equality with all other owners of property
within the limits of the city, equally entitled with them to all

municipal rights and privileges, but equally subject to all municipal burdens and charges. As a compensation for the additional burdens and servitudes, he becomes entitled to the benefit of the city schools, the protection of the city police and against fire, and to the privileges of water, light and other conveniences furnished by municipalities at the public expense. The greater value claimed by plaintiff in the reversion of a county road over that in a city street is more fanciful than real. Upon the extinguishment of an easement in a county road, the land of course reverts to the adjoining owner, and so it does in effect when a street is vacated within a city. It is provided in such cases that it shall revert to the owners of the real estate adjacent on each side, in proportion to the frontage, except where it has been appropriated and devoted to a public use in a different proportion. (Gen. Stat. 1889, ¶ 582.) But even if the fee remains unchanged, the easement exists, subject to the supervision of the city and to the liabilities and burdens which attached to streets in the original territory.

A reference is made to *Heiple v. City*, 8 Pac. Rep. 907, as an authority against imposing the special tax upon a roadway brought within the corporate limits. That decision appears to have been controlled by peculiar statutes with reference to the divided control of counties and cities over highways; and even there it is held that the case would be "different where by the act the limits of the city are extended and new territory is acquired, and subjected to the laws and jurisdiction of the municipality." Judge Elliott, in treating of this subject in his work on Roads and Streets, says:

"Our opinion is that, as soon as a town or city is incorporated, the public ways, that is, ways belonging to the public and not owned by private corporations, come within the jurisdiction and control of the new public corporation, unless the statute expressly or impliedly continues the authority of the county or township officers. It is apparent that the ways must, of necessity, change character and the servitude be much extended. This extension carries with it wider duties and greater liabilities, thus requiring essentially different control

and care. . . . Where there is no statute, the corporation of a city seems naturally to imply that the highways within its territorial limits become streets, and, as such, subject to the control of the municipality." (Elliott, Roads & St. 313.)

"Unless the legislature declares otherwise, an extension of the corporate limits imposes upon a city the same duties and liabilities as to the streets in the annexed territory as rest upon it in reference to the streets in the original territory of the city." (15 Am. & Eng. Encyc. of Law, 1017.)

We conclude that the city authorities had the power to construct the sidewalk on Quindaro avenue or boulevard, and to assess the cost of the same against the abutting property.

Some other objections to the special tax are mentioned in plaintiff's brief, but they were not urged in the oral argument. One is that the petition for the sidewalk was insufficient, because it designated the street as Quindaro avenue. It appears to have been known as Quindaro avenue, although it was variously designated in the record. It is sometimes spoken of as Quindaro road, as Quindaro boulevard, and as Quindaro avenue. It was designated as Quindaro avenue in the petition, and by the same name in the ordinance providing for the sidewalk. It further appears that subsequently the name was definitely fixed by ordinance as Quindaro boulevard. We think the designation of the street was sufficiently definite, so that no one could be misled or prejudiced.

There is a further objection, that the petition did not have a sufficient number of signers. The record shows this claim to be unfounded; and, more than that, neither of these objections was brought to the attention of the district court. At the trial, counsel for plaintiff stated that there was no objection to the petition nor to the regularity of any of the preliminary proceedings, except as to the detailed estimate of the cost of the proposed improvements which is required to be made under oath by the city engineer. Neither is there anything substantial in this last objection, as the lack of an estimate was not alleged in the petition as a ground for injunction. An inquiry was made of the city clerk if he found

an estimate among the papers and records which he had in his hands at the trial. He was unable to find any, and stated that he had not made a search, but supposed there was one, as he had found estimates in all cases in which he had looked. He was asked to examine the records with reference to this estimate, but does not appear to have been ever recalled, or that any further inquiry upon the subject was made.

Another point is presented, that plaintiff's land is not a part of the city, for the reason that it consisted of more than five acres and was not wholly surrounded by platted territory;

2. Collateral attack.

but the annexation proceedings are not open to attack in this action. The proceedings to annex, upon their face, are regular. The action of the city council and the findings and decree of the court in the extension of the limits end the controversy as to whether the territory is rightfully within the limits of the city. (Gen. Stat. of 1889, ¶ 552.)

The judgment of the district court will be affirmed.

All the Justices concurring.