THE STATE OF KANSAS, *ex rel.* *Fred S. Jackson, as Attorney-general, etc., Plaintiff,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF FRANKLIN, *Defendant.*

No. 17,225.

### SYLLABUS BY THE COURT.

COUNTY COMMISSIONERS—*Maintenance of Bridges in Cities— Discretion—Statute Not Mandatory.* Chapter 81 of the Laws of 1905, authorizing the county commissioners of Franklin county to repair, maintain or rebuild certain bridges in the city of Ottawa, is not mandatory, and while the county board of commissioners may, without interfering with or restricting the city in the regulation and control of the bridges, make appropriations for the purposes named in the act, the exercise of this power is discretionary.

Original proceeding in mandamus. Opinion filed March 11, 1911. Judgment for the defendant.

*Fred S. Jackson, attorney-general,* and *F. A. Waddle,* for the plaintiff.

*W. B. Pleasant,* for the defendant.

The opinion of the court was delivered by

BENSON, J.: The question for decision in this case is whether Franklin county shall be compelled to repair two bridges spanning the Marais des Cygnes river in the city of Ottawa, a city of the second class. The bridges were constructed more than twenty-five years ago, in public streets of the city, forming parts of the streets. Each bridge cost more than $5000, and the county has a population of over 20,000. The petition alleges that the bridges were erected by the county. This is not denied by the answer, and is therefore taken as true, although it may not be important whether they were in fact erected at the sole expense of the county or by means of appropriations from both the county and the city treasuries. The

bridges are in need of repair. Some repairs have been made by the city since this action of mandamus was begun, in order to make the bridges safe for travel, but more extensive repairs are needed, which the county commissioners refuse to make. While the answer alleges that there are not sufficient funds in the county treasury for this purpose, without retarding other necessary work, it is inferred from all that appears in the record and argument that the real question is not one of means, but of obligation. The fact that several other bridges in the county across the same river are maintained at the expense of the taxpayers of the county, including those of the city, probably stimulates the authorities of the city to seek an equalization of the burden, while the fact that these bridges are within the exclusive control of the city may prompt the county authorities to question their power to act, and so this action was brought to determine the controversy.

Bridges in cities, situated as these bridges are, whether built by the county or city, or by the combined action of both, are, under the general laws of the state, in the exclusive control of the city. The evils of a divided control are referred to in the opinion in *Comm'rs of Shawnee Co. v. City of Topeka,* 39 Kan. 197. The reasons for an undivided control are apparent. Bridges are often used for street railways, for the support of water and gas mains and telephone and telegraph connections, and may be used for other public purposes, under the exclusive regulation and control of the city. A city is liable in certain cases for injuries caused by defective bridges. If the county commissioners should take charge and control of repairs and maintenance, and have paramount authority to determine how and when this power should be exercised, confusion might result, with inconvenience to the public and loss to the city.

There is no common-law duty resting upon a county

to repair bridges built in city streets in this state, and this is true although the bridge be built wholly or partially by the county or a township. (*City of Eudora v. Miller,* 30 Kan. 494; *Comm'rs of Shawnee Co. v. City of Topeka,* 39 Kan. 197; *City of Rosedale v. Golding,* 55 Kan. 167; *Nand v. City of Newton,* 58 Kan. 229; *Cloud County v. Mitchell County,* 75 Kan. 750.) But it is contended that the county is bound to make the repairs in this instance because of the express mandate of a statute. Following is the act relied upon:

"An act to authorize the county commissioners of Franklin county to repair, maintain or rebuild certain bridges in the city of Ottawa, in said county.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. The board of county commissioners of Franklin county are hereby authorized to repair, maintain or rebuild either or both of the bridges now spanning the Marais des Cygnes river, one on Main the other on Locust street, in said city of Ottawa, and for that purpose shall pay for said repairs, maintenance or rebuilding out of any funds of said county available for such purpose." (Laws 1905, ch. 81.)

The plaintiff contends that this act is mandatory. On the other hand, the defendant argues that it is unconstitutional, if construed to be mandatory, because it deprives the city of corporate power by special act. (Const. art. 12, §§ 1, 5; *Gray v. Crockett,* 30 Kan. 138; *Comm'rs of Shawnee Co. v. The State, ex rel.,* 49 Kan. 486.) That the act is permissive only appears from the ordinary meaning of the words "authorized" and "to authorize," used in the statute and in the title. The primary meaning of the word "authorize" is to empower, to give a right to act. It is true that, as often used in statutes, it may imply a command. It has been held that when a power is conferred by statute upon a municipal corporation, for the public good, the exercise of the power is mandatory, power and authority in such a case being held equivalent to duty

and obligation. (*Magaha v. Hagerstown*, 95 Md. 62; *State v. Henry*, 87 Miss. 125.) But it has been held that this construction "has prevailed only in cases where the statute under consideration, when taken as a whole, and viewed in the light of surrounding circumstances, indicated a purpose on the part of the legislature to enact a law mandatory in its character." (*People v. Mayor, etc., of City of Syracuse*, 12 N. Y. Supp. 890, 894, affirmed in 128 N. Y. 632.)

Considering the fact that when this law was passed the city had exclusive control of the bridges, which control still continues, and that public policy requires that there should be unity in such control, that if construed as mandatory it would be out of harmony with our scheme of street improvement, regulation and control in cities, and that the terms used primarily imply permission, it is reasonably clear that the legislature intended only to give the county board discretion in this matter, and not to impose an imperative obligation. This conclusion seems the more reasonable in view of the grave constitutional question that would arise from an interpretation to the contrary. It is urged that the provision that the county "shall pay for said repairs . . . out of any funds . . . available" (Laws 1905, ch. 81, § 1) makes the act mandatory, but the imperative "shall" manifestly relates to such repairs as the board may make, and only means that, if the expense be incurred, it shall be paid out of any fund available.

It was said, in *The State, ex rel., v. Shawnee Co.*, 57 Kan. 267:

"Apart from the maintenance and control of the streets, it is doubtless competent for the legislature to authorize a county to build a bridge at any point within the limits of the county." (p. 270.)

So it may, with like authority, make appropriations to assist in building bridges. (*Kansas City Bridge & Iron Co. v. Comm'rs of Wyandotte Co.*, 35 Kan. 557.)

In *Comm'rs of Shawnee Co. v. City of Topeka*, 39 Kan. 197, it was said:

"Probably the county has the power to construct and maintain a bridge within the limits of a city, even when it becomes a part of its streets; or it may, with the concurrence of the city authorities, build and keep in repair such a bridge, but it is quite a different proposition that because of such aid in building the bridge the county is compelled to keep it in repair." (p. 201.)

Construing the special act of 1905 as giving the county commissioners authority to appropriate money to repair and maintain the bridges in question, but not to control the streets or to restrict the city in the regulation, management and control of the bridges, no reason is perceived why it is not a valid exercise of legislative power; but as the act is not mandatory, even if it might have been made so, the county commissioners can not be compelled to act. (*The State ex rel. v. Comm'rs of Wabaunsee Co.*, 45 Kan. 731.) Judgment is therefore rendered for the defendant.