No. 24,344.

CITY OF COTTONWOOD FALLS, *Appellant,* v. THE BOARD OF COUNTY COMMISSIONERS.OF CHASE COUNTY, *Appellee.*

### SYLLABUS BY THE COURT.

1. BRIDGES—*Bridge Within City Limits—Liability of County for Maintenance —Discretion of County Commissioners.* Chase county, in 1914, contributed $16,000 and Cottonwood Falls $5,000 for constructing a concrete bridge across the Cottonwood river wholly within the incorporated limits of Cottonwood Falls. The bridge was a part of the main thoroughfare of the city. Afterwards the city paved the bridge and sought to charge the expense therefor to the county. The county denied liability and refused payment. *Held,* that the aid given by the county in the construction of the bridge was voluntary and that the county was not liable to maintain or repair the bridge.

2. SAME—*Construction and Maintenance of Bridges Within Cities—Interpretation of Statutes.* In enacting chapter 80 of the Laws of 1917, providing a system for the construction and maintenance of bridges and culverts within the jurisdiction of the board of county commissioners, it was not the intention of the legislature to deprive incorporated cities of their control over their streets and alleys, nor to relieve them of the liability incident to such control. Section 7 of the act, which provides, "That all bridges or culverts built in this state at county expense, or for which the county has granted aid, shall be known as 'county bridges' or 'county culverts,' and shall be maintained thereafter under the direction of the county board and county engineer at county expense," does not require the county to maintain or keep in repair bridges constructed by the county and located wholly within the limits of incorporated cities.

Appeal from Chase, district court; WILLIAM C. HARRIS, judge. Opinion filed March 10, 1923. Affirmed.

*Henry E. Ganse,* and *Gilbert H. Frith,* both of Emporia, for the appellant.
*F. A. Meckel,* of Cottonwood Falls, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The city of Cottonwood Falls, which is of the third class, sought to compel the county to pay for the paving of a bridge across the Cottonwood river. The bridge lies wholly within the limits of the city. Judgment was for the defendant. Plaintiff appeals.

Prior to 1904 the north limits of the city were formed by the south bank of the river. In that year the limits on the north were extended

so as to include both banks of the river and ground approximately 200 yards beyond. Sometime in the seventies, Falls township, within which the city is located, erected an iron bridge where the main street crosses the river, and until 1914 the county maintained and kept this bridge in repair. In 1914 a new concrete bridge was built at a cost of $21,000 to replace the old structure. Of this sum the county paid $16,000 and the city $5,000. The county had exclusive charge of the building of the bridge. It was covered with dirt, similar to a dirt road. On February 2, 1920, the city council adopted a resolution providing, "That it is necessary to grade, curb, gutter and pave Broadway street from the north line of Pearl street north to the north city limits." (This included the bridge.) The city let the contract and the bridge was paved with brick.

An ordinance was enacted by the city levying a special assessment against adjacent property to pay the cost of the paving improvements. The ordinance provided for the issuance of bonds and the charge against each tract was designated to be paid in ten equal annual installments, except the charge against the county, which was in a lump sum: "River Bridge Chase County $3,472.43." The county had no property adjacent to the bridge.

Thereafter the board of county commissioners, at a regular meeting, adopted and spread upon the minutes a resolution denying liability and refusing payment.

After completion of the bridge, the city, at its own cost, had a number of electric lights placed thereon.

It is the contention of plaintiff that the cost of paving of the bridge is governed by the provisions of section 7, chapter 80, Laws of 1917; that the county is liable for its maintenance and repair.

Section 7 is as follows:

"That all bridges or culverts built in this state at county expense, or for which the county has granted aid, shall be known as 'county bridges' or 'county culverts,' and shall be maintained thereafter under the direction of the county board and the county engineer at county expense. All bridges or culverts on township roads built at the expense of the several townships without county aid shall be known as 'township bridges' and 'township culverts,' and shall be maintained thereafter under the direction of the township board and the county engineer at township expense."

In order to get the intent of section 7, consideration should be given to other provisions of the act, which must be construed together. The act appears to provide a complete system for the con-

struction and maintenance of bridges and culverts within the jurisdiction of the board of county commissioners. It requires the county engineer to make a careful inspection of all bridges, to make an estimate of the cost of all repairs and maintenance necessary to keep them in reasonably safe condition for public traffic; to make reports of the same to the county board, giving the location and character of repairs needed and materials that should be used. Based upon this the county board shall determine the amount of tax which, in its judgment, should be raised for such repair, but before levies are finally determined upon the board is required to hold a public meeting to hear protests against the levies and against the bridge improvements. Notice is required to be published in the official county paper at least ten days prior to the date of such meeting, containing information as to the location of each bridge which the board proposes to repair. After the termination of the public hearing the board is required to make an order and spread the same on the journal of its proceedings, stating the exact location of the bridges to be repaired and the character of the repairs contemplated. That whenever necessary to repair a bridge the engineer's estimated cost of which will not exceed $25,000 the board is authorized to appropriate from the county bridge fund a sum sufficient to meet the entire expense. The board is required to make all contracts for labor, material and other expenses necessary for the repairs; that when the board is of the opinion that it is necessary to repair such a bridge, it shall determine in what manner the same shall be repaired and shall direct the county engineer to prepare complete plans, and after the approved plans and specifications have been filed, and before notice of the letting is published, the county engineer shall make and furnish to the board an accurate, sworn estimate of the repairs; that if the cost shall exceed the sum of $25,000 the board, before making the appropriation, shall submit the question to the voters as to whether or not such appropriation shall be made. It requires that for certain bridges the plans and estimates, before being finally adopted, shall be submitted to the state highway commissioner for his approval. It also provides that no contract shall be legal and binding on the county unless plans and estimates of cost shall be approved by the county engineer or the state highway commissioner; provides that the board shall conduct the letting of all contracts for bridge work in such manner as to give free, open competition; that within ten days after any public letting, the bidder to whom any

contract shall be awarded shall enter into contract with the board of county commissioners and shall give bond; that "The said county board or township commissioners shall not have power to let any contract . . . except as approved by the board at an authorized meeting." Also, that any officer who shall violate any provisions of the act shall be deemed guilty of a misdemeanor, also other details not necessary here to mention.

There was a manifest purpose to wipe the slate clean of previous designations and classifications. The act appears complete in itself. Section 7, while designating "all bridges . . . built . . . at county expense, or for which the county has granted aid," undoubtedly refers to bridges outside of or beyond the control of the cities. It was not the legislative intent to make the counties liable for the maintenance of bridges lying wholly within the limits of an incorporated city. Section 869 of the General Statutes of 1915 expressly provides that the streets and alleys of cities of the third class shall be under the control of the mayor and council. Chapter 80 nowhere indicates an intention to take from the city officials their control and power over the streets and alleys of the different cities nor to relieve the cities of the liability incident to such control.

In *City of Eudora v. Miller*, 30 Kan. 494, 2 Pac. 685, it was said in the syllabus:

"A bridge situated wholly within the limits of a city is, with its approaches, a part of the public streets, and as such within the scope of the city's duties and liabilities."

This syllabus is quoted with approval in *City of Rosedale v. Golding*, 55 Kan. 167, 172, 40 Pac. 284.

In *Comm'rs of Shawnee Co. v. City of Topeka*, 39 Kan. 197, 18 Pac. 161, it was said in the syllabus:

"The provisions of our statute relating to bridges may be fairly construed to mean that the county shall have power over those within its borders, and must build and maintain them, except those within the limits of certain cities, constituting a part of their streets, which are to be erected and maintained by such cities." (¶ 2.)

In the opinion, the court said, on the question of keeping in repair a bridge owned jointly by the county and the city:

"Probably the county has the power to construct and maintain a bridge within the limits of a city, even when it becomes a part of its streets; or it may, with the concurrence of the city authorities, build and keep in repair such a bridge, but it is quite a different proposition that because of such aid

in building the bridge, the county is compelled to keep it in repair. It is one thing to have authority to render voluntary assistance in such matters, and quite a different one to be obliged to furnish compulsory aid." (p. 201.)

In the instant case the county pleaded that the money expended by it in the construction of the bridge was a voluntary contribution.

By enacting chapter 81, the legislature of 1905 authorized the board of county commissioners of Franklin county to repair, maintain or rebuild certain bridges situated within the city of Ottawa. The question arose as to whether the county was compelled to so maintain such bridges.

This court in *The State v. Franklin County,* 84 Kan. 404, 114 Pac. 247, held, in the syllabus:

"Chapter 81 of the Laws of 1905, authorizing the county commissioners of Franklin county to repair, maintain or rebuild certain bridges in the city of Ottawa, is not mandatory, and while the county board of commissioners may, without interfering with or restricting the city in the regulation and control of the bridge, make appropriations for the purposes named in the act, the exercise of this power is discretionary."

In the opinion it was said:

"Bridges in cities, situated as these bridges are, whether built by the county or city, or by the combined action of both, are, under the general laws of the state, in the exclusive control of the city. The evils of a divided control are referred to in the opinion in *Comm'rs of Shawnee Co. v. City of Topeka,* 39 Kan. 197. The reasons for an undivided control are apparent. Bridges are often used for street railways, for the support of water and gas mains and telephone and telegraph connections, and may be used for other public purposes, under the exclusive regulation and control of the city. A city is liable in certain cases for injuries caused by defective bridges. If the county commissioners should take charge and control of repairs and maintenance, and have paramount authority to determine how and when this power should be exercised, confusion might result, with inconvenience to the public and loss to the city.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Considering the fact that when this law was passed the city had exclusive control of the bridges, which control still continues, and that public policy requires that there should be unity in such control, that if construed as mandatory it would be out of harmony with our scheme of street improvement, regulation and control in cities, and that the terms used primarily imply permission, it is reasonably clear that the legislature intended only to give the county board discretion in this matter, and not to impose an imperative obligation. This conclusion seems the more reasonable in view of the grave constitutional question that would arise from an interpretation to the contrary." (pp. 405-407.)

Had it been within the power of the county to voluntarily pay for

the paving of the bridge, none of the antecedent requirements were carried out which would have authorized an appropriation by the board of county commissioners.

Whether or not such paving could be construed as repairs need not here be decided. The county was not liable for the expense. This conclusion makes it unnecessary to decide other questions raised in the briefs.

The judgment is affirmed.