No. 26,697.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK, *Appellant*, v. CHARLES TOLAND, *Appellee*.

No. 26,698.

CHARLES TOLAND, *Appellee*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK, *Appellant*.

SYLLABUS BY THE COURT.

SHERIFFS—*Road Patrol—Creation and Control*. The provisions of the statute (R. S. 19-806) authorizing the sheriff, with the approval of the board of county commissioners, in certain counties, to appoint deputy sheriffs to patrol the highways considered, and *held:* (*a*) The statute is not mandatory in its character. (*b*) The sheriff and commissioners have the right and power to create a road patrol and to fix the number thereof, not exceeding three. (*c*) The board of county commissioners have the power to fix their salaries. (*d*) The appointing power, direction and control of such deputy sheriffs is in the sheriff.

Appeals from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed May 8, 1926. Affirmed.

*Clyde M. Hudson*, of Wichita, for the appellant.

*J. W. Ward, Tom Harley* and *George Siefkin*, all of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: These actions involve the construction of section 19-806 of the Revised Statutes, enacted in 1923, providing for the appointment in certain counties of deputy sheriffs to patrol the highways. The cases were tried together on agreed statements of fact. In one, Toland sought to recover for services as deputy sheriff and road patrolman. In the other the county sought to recover possession of a motorcycle which had been furnished Toland for use in the

Authorize, 6 C. J. p. 865 n. 99.   Evidence, 23 C. J. pp. 59 n. 22, 161 n. 72. Sheriffs and Constables, 35 Cyc. pp. 1521 n. 21, 1523 n. 57, 1529 n. 21, 1552 n. 74. Statutes, 36 Cyc. pp. 1108 n. 46, 1110 n. 54, 1157 n. 4, 1159 n. 23, 1161 n. 45.

performance of his duties. Toland prevailed, and the commissioners appeal.

The statute under consideration reads:

"That the sheriff of any county in the state, having a population of 65,000 or more, is hereby authorized to appoint, with the approval of the board of county commissioners of his county, such number of deputy sheriffs, not exceeding three, as in his judgment and the board of county commissioners' judgment may deem necessary to patrol the highways in their county, and the board of county commissioners of such county are authorized to fix the salaries of such deputy sheriffs, in a sum not to exceed $120 monthly for the first year, $130 monthly for the second year, and $140 monthly for the third year, and to provide such deputy sheriffs with motorcycles, or other suitable means of conveyance, for the proper discharge of their duties in enforcing the traffic laws and regulations for the operation of vehicles and motor vehicles on the public highways of the county and state. Where the compensation is dependent upon the period of service, it shall be established by the length of time each of said members has continuously served in such work." (R. S. 19-806.)

On March 29, 1923, the sheriff requested the board of county commissioners to fix the number of deputies necessary to patrol the highways in Sedgwick county. On April 14 following, the board adopted a resolution providing that the county adopt the road-patrol system "for at least six months, for the purpose of seeing if it proves beneficial to the citizens of the county." On June 3, the sheriff appointed Toland as one of three deputies. On June 18 the commissioners adopted a resolution confirming the appointments for a period of not to exceed six months. Some time later difficulties arose between the sheriff and one of the commissioners, and an action was commenced by the commissioner against the sheriff for $25,000. A little later Toland had trouble with one of the commissioners, and the commissioners procured Toland's arrest. On November 28 the commissioners adopted a resolution providing for a discontinuance of the services of the three patrolmen, effective December 17, 1923, and had a copy of the resolution served on Toland. The patrolmen were employed as deputy sheriffs at a monthly salary of $120. They continued in their work until May 31, 1924. Toland sued to recover salary from December 17, 1923, to May 31, 1924.

When Toland began work as patrolman he was furnished with a motorcycle of the value of $300 to be used in the performance of his duties. The commissioners demanded possession of the motorcycle on December 17, 1923. At that time it was of the value of $250. At the time of the trial it had a value of $150. Toland had possession and control of the motorcycle from the time of its delivery to

him until May 31, 1924. During the time he used it in his patrol work it became necessary to have it repaired. Repairs were made amounting to $99.47. With the knowledge and consent of the sheriff, when Toland quit work as deputy sheriff he left the motorcycle with the repair company until a claimed lien for the amount due had been paid. Afterwards, and before the trial, it was delivered into the possession of the commissioners. A change occurred in the personnel of the board of county commissioners January, 1925. Three deputy sheriffs were appointed under the statute to patrol the highways of Sedgwick county, who ever since have been and now are patrolling such highways and drawing their salaries as provided in the act under consideration.

Toland contends that the word "authorized" used in the statute is mandatory; that since the commissioners determined the necessity of deputy sheriffs to patrol the highways, it was within the power of the sheriff to appoint such deputies; that he (the sheriff) is responsible for their acts; and that they are under his supervision and control.

The commissioners contend that the statute empowers the board of county commissioners to employ the necessary deputies and to discharge them at any time, and that such matter of employment is left entirely to the judgment of the county commissioners as to whether such deputies are needed, the length of time they are needed, and whether their services are satisfactory.

"In determining the intent of the legislature the court is not limited to a mere consideration of the words employed, but may properly look to the purpose to be accomplished, the necessity and effect of the statute, under the different constructions suggested." (*City of Emporia v. Norton,* 16 Kan. 236.)

"In construing a statute the court may look to the history of the times, to the causes which induced its enactment and to the object sought to be attained." (*State, ex rel., v. Davis,* 114 Kan. 270, 287, 217 Pac. 905.)

The question in the instant case is, Why was the statute enacted, and what was its purpose? It is a matter of common knowledge that during the past several years transportation over public highways has undergone a radical change. The dirt road has given way to the hard-surfaced road. Horse-drawn vehicles have almost entirely given way to motor vehicles. Instead of traveling from three to seven miles an hour over public highways, the public is now traveling from twenty-five to seventy-five miles an hour. Many drivers of motor vehicles have shown a reckless and total disregard for the rights of others upon the highways, causing innumerable accidents,

loss of property, and in some instances loss of life. Confronted with this situation, the legislature sought to restrict and regulate traffic on public highways, and in an endeavor so to do passed the act under consideration.

Did the legislature intend the word "authorize" as used in the statute to be mandatory? We think not. The primary meaning of the word "authorize" is to empower, to give a right to act. The more reasonable view in our opinion is that the word as here used is permissive only. The legislature doubtless considered that there might be counties having a population of 65,000 where a road patrol would be needed, and others where it would not, and decided that the authorization should be granted in those counties where the sheriff and the board of county commissioners considered the conditions were such as to require patrol. While it is true that in many statutes the word authorize may imply a command, we think if the legislature had so intended here it would undoubtedly have used other words to express such intention. A mandatory construction has prevailed only in cases where the statute under consideration, when taken as a whole and viewed in the light of surrounding circumstances, indicated a purpose on the part of the legislature to enact a law mandatory in its character. (*State v. Franklin County,* 84 Kan. 404, 114 Pac. 247; *City of Cottonwood Falls v. Chase County,* 113 Kan. 164, 213 Pac. 648.) The act specifies "that the sheriff . . . is hereby authorized to appoint, with the approval of the board of county commissioners of his county, such number of deputy sheriffs, not exceeding three," etc.

We are of the opinion the act does not give the commissioners the power to fix the term of such deputy sheriffs, and in the instant case, while the commissioners passed a resolution attempting to fix the term, they did not do so. The resolution reads:

"Kernan moved that the county adopt the road-patrol system as provided for by the 1923 legislature, for at least six months, for the purpose of seeing if it proves beneficial to the citizens of the county."

Although the resolution did not fix the term of the deputies appointed by the sheriff, yet it may be said to have fixed a minimum time, but did not prohibit a maximum time.

The resolution approved the request of the sheriff that a patrol be established; that is to say, the board joined with the sheriff in the establishment of the patrol. Whether or not the patrol once established could be discontinued by the commissioners without the con-

sent of the sheriff need not be decided, inasmuch as both the sheriff and commissioners are now of the opinion it should be continued.

The sheriff and commissioners had the right and power under the act to create the road patrol and to fix the number of members of the patrol, not exceeding three. The commissioners had the power to fix their salaries, while the appointing power, supervision, direction and control of the deputies was in the sheriff. (R. S. 19-808; *Jones v. Simmons,* 115 Kan. 505, 223 Pac. 284.)

The judgment is affirmed.