No. 26,595.

O. N. Ashley et al., *Appellees*, v. The Board of County Commissioners of the County of Wyandotte et al., *Appellants*.

### SYLLABUS BY THE COURT.

Statutes—*Special Laws—Constitutionality.* The act entitled "An act relating to bridges and approaches thereto in certain counties" (Laws 1923, ch. 76; R. S. 68-1301 to 68-1304), although general in form is held to be local and special in its application and operation, and is repugnant to section 17 of article 2 of the state constitution.

Appeal from Wyandotte district court, division No. 3; William H. McCamish, judge. Opinion filed July 10, 1926. Affirmed.

*J. H. Brady,* county counselor, and *T. F. Railsback,* of Kansas City, for the appellants; *E. S. McAnany, M. L. Alden* and *T. M. Van Cleave,* all of Kansas City, of counsel.

*C. W. Trickett* and *O. L. Miller,* both of Kansas City, for the appellees.

The opinion of the court was delivered by

Johnston, C. J.: This proceeding was brought by a number of taxpayers to enjoin the board of county commissioners of Wyandotte county from constructing a bridge across the Kansas river at Seventh street in Kansas City, Kan., and also from issuing bonds and letting a contract for the construction of the bridge and the levying and collecting of taxes upon the property of plaintiffs for the construction or maintenance of this or any other bridge within the corporate limits of Kansas City. The board was proceeding to the construction of the bridge under the authority of chapter 76 of the Laws of 1923 (R. S. 68-1301 to 68-1304). Upon the pleadings and proof the trial court held that the act under which the board was proceeding was local and special, and therefore fell within the inhibition of the constitution; that the law was not properly enacted; and even if it were held to be valid, the act itself discloses that it was not intended to authorize the construction of bridges within the limits of incorporated cities; and hence a judgment was rendered enjoining the defendants from building the bridge and from levying or collecting any taxes on the property of the plaintiffs. Defendant appeals.

The act under which the board was proceeding was entitled, "An act relating to bridges and approaches thereto in certain counties," and its material provisions are that the board of county commis-

---

Statutes, 36 Cyc. pp. 990 n. 84, 1003 n. 30, 1005 n. 33, 1009 n. 44.

sioners of any county which has or may hereafter have a population of 120,000 or more may locate and construct one bridge and the necessary approaches thereto across any river flowing through the county at a point where a public street, highway or trafficway crosses or if prolonged would cross such river, and to issue bonds of the county for the estimated cost of the same without authorization of an election, and that none of the limitations in the laws of the state on the amount of indebtedness the county may assume, should be applicable; and also provided that the bonds issued under the act should not be computed in determining the amount of county indebtedness under any limitation statute relative to the limit of county indebtedness. It is further provided that nothing in the act should preclude the application to any bridge erected under a bridge act of 1905, and that no bridge should be constructed under the act at any location where a bridge exists at the time rights under the act are exercised. Another provision is that if within fifty days after the board has passed a resolution that it is necessary to construct a bridge in pursuance of the act, a petition of twenty-five per cent of the qualified voters is presented asking for a special election to vote upon the question of issuing bonds for the improvements, and if the board finds the petition to be sufficient it shall call a special election to vote upon the issuance of bonds. It is further provided that the board may direct the county engineer to prepare plans and specifications for the bridge and make an estimate of its cost, and employ engineers to assist the county engineer in making the plans and specifications and in superintending the construction after the plans and specifications have been completed and approved. The board is then authorized to advertise for bids and let a contract for its construction to the lowest responsible bidder, but that no contract shall be awarded at a price in excess of the estimate made. The contractor is required to give a bond to secure the faithful performance of the contract. He is to be paid out of the proceeds of the bonds, which are to run for twenty years and bear interest at a rate not exceeding six per cent. There are provisions relating to the execution and registration of the bonds providing that they shall not be sold for less than par, that no commission shall be paid for their sale, and it is made the duty of the board to levy a tax annually on all property in the county for payment of the bonds. A final provision is that no suit shall be brought to enjoin the erection of the bridge or the issuance of the bonds unless it is commenced within thirty days after the contract for the bridge is let.

The plaintiffs contended in the trial court, and are contending in this court, that the act, couched as it is in general terms, indicates that the legislative intent was to provide only for the construction of a county bridge, one that was to be built, maintained and controlled by county authorities, and not for the erection of one within an incorporated city to be maintained and controlled by city authorities. It is argued that we have statutes giving full authority to cities to build bridges within their limits, and when built are to be maintained and controlled absolutely by city authorities; and on the other hand the laws authorizing counties to build bridges are usually confined to those to be erected within the county but outside of cities. It is argued that the building of a bridge by one municipality within another municipality is not in accordance with our system or policy, and that the act is not to be given such an interpretation unless the terms used by the legislature plainly and clearly express that intention. It is'said that bridges are part of the streets of a city, over which cities have absolute control; that there can be no divided control, or in fact any control of them by the authorities of counties, and therefore the act should be construed to mean that the bridge authorized to be erected was at a certain point in the county but outside of the limits of the city, citing *Commissioners of Shawnee Co. v. City of Topeka,* 39 Kan. 197, 18 Pac. 161; *McGrew v. Stewart,* 51 Kan. 185, 32 Pac. 896; *City of Topeka v. Shawnee County,* 91 Kan. 275, 137 Pac. 951; *City of Cottonwood Falls v. Chase County,* 113 Kan. 164, 213 Pac. 648. It is therefore urged that as the city has exclusive authority over bridges within its limits, and as each municipality is clothed with ample power to erect and maintain bridges within its own jurisdiction, it was not in the contemplation of the legislature that one municipality should intrude upon the other, or that in the absence of a clearly expressed intention the county should assume jurisdiction within the corporate limits of the city. Nothing contained in the act expresses a purpose to make its provision applicable within the limits of the city unless it be the reference therein to the point where a public street crosses a river; but it is not uncommon to apply the term street to a highway in an unincorporated village or even to a public road in a rural district. It must be conceded, and in fact is conceded by plaintiffs, that under its sovereign power the legislature can authorize a county to build' bridges within a city, impose the burden of maintenance upon the county and give it absolute control over city streets; but

that is not the system that has been adopted in this state. The general policy has been to give cities exclusive power to erect and maintain streets and the bridges thereon within the corporate limits and exclusive control of them. The county and the district are distinct municipalities, with independent and conflicting jurisdiction as to streets and bridges, and an intention of the legislature that there should be an assumption of jurisdiction and control by a county over bridges within a city is not lightly to be inferred. Strong reasons have been presented that such jurisdiction and control was not within the contemplation of the legislature in the passage of the act, but in view of the opinion reached on another branch of the case it is not deemed necessary to determine the question of the application of the act to bridges within incorporated cities.

The principal question involved in the case is the constitutionality of the act. Plaintiffs contend that although it is general in form, the classification and the restrictive features with which the act is hedged make it local and special in its application and therefore violative of section 17 of article 2 of the constitution. That limitation was adopted in 1906 to meet a strong tendency and prevailing practice of enacting special legislation, and these log-rolling methods had proceeded to such an extent as to give rise to the remark:

"It has been estimated that fully one-half of the laws enacted by the state legislature in recent years have been special laws." (*Anderson v. Cloud County,* 77 Kan. 721, 95 Pac. 583.)

To cure this vice a limitation was prescribed that all laws of a general nature shall have uniform operation throughout the state, and that no special law shall be enacted where a general law can be made applicable, and further placed in the courts of the state the power and responsibility of determining whether an act is repugnant to the limitation. In form the act in question is general and is based in part on a classification of population, but added to it are other restrictive features which give it an obviously local and special application and operation. It places counties having a population of 120,000 or more in a class by themselves, and classifications based on the characteristic of population and which are free from other constitutional objections have in some instances been deemed to be valid legislation. (*State v. Downs,* 60 Kan. 788, 57 Pac. 962; *Tarman v. Atchison,* 69 Kan. 483, 77 Pac. 111; *Parker-Washington Co. v. Kansas City,* 73 Kan. 722, 85 Pac. 781, and cases cited.) To be valid, however, the distinction between one class and another

must be real and germane to the purposes of the act, and failing in these respects the act must necessarily be condemned as invalid. In the matter of building bridges it is not easy to discern a real difference between counties of 100,000 and those having 120,000, nor is it readily apparent why the general laws relating to the erecting of bridges which appear to be ample and adapted to all the counties of the state, may not be equally applicable to Wyandotte, the only county in the state having 120,000 inhabitants. At the time of its enactment and up to the present time the act is only applicable to a single county, Wyandotte, and it obviously was promoted and passed for the purposes and benefit of its promoters in that county. It is not unreasonable, of course, to contemplate that other counties than Wyandotte will at some time attain the number of inhabitants named in the act, but that is only one of its special and exclusive features. It is not only limited in its operation to one county, but it is limited also to one bridge within one county. When a bridge is built in Wyandotte county, the act thereafter ceases to have any force or application to that county. If, in the course of time, another county should reach the population named, the application of the act would still be confined to a single county, in which only a single bridge could be built; and when a third county attained the required population and should proceed to build one bridge, the act would be without effect in the first and second counties. Another restriction is that no bridge may be built under the act where a bridge is in existence, and this provision precludes the construction of a new bridge at a point where one existed, however much it might be needed. Again, the act contains a limitation that the bridge can only be erected at a point where a public street, highway or trafficway crosses, or if prolonged would cross, a river, thus making it special to a place where no street existed, but which if prolonged would cross a river. Other limitations are that statutes of limitation shall not apply to actions taken under the act, and also that the bonds issued under it shall not be counted or considered in determining the indebtedness of the county, which conflicts with a number of general statutes fixing a limitation on the indebtedness which a county may assume. No substantial reasons can be given for these exceptions and restrictions, and they plainly disclose that the act is local and special in its application and results. It is special not only by what is included in its scope but also on what is

excluded. Its provisions indicate that the act was passed for the purpose of securing the building of a bridge at the particular point in Wyandotte county where the defendants proposed to build the bridge in question. An act which is designed to apply to one municipality and excludes others from its operation is ordinarily regarded to be special and repugnant to the constitutional limitations. (*City of Topeka v. Gillett,* 32 Kan. 431, 4 Pac. 800; *Cole v. Dorr,* 80 Kan. 251, 101 Pac. 1016; *Bull v. Kelley,* 83 Kan. 597, 112 Pac. 133; *State, ex rel., v. City of Lawrence,* 101 Kan. 225, 165 Pac. 826; *Patrick v. Haskell County,* 105 Kan. 153, 181 Pac. 611.) In *State, ex rel., v. Deming,* 98 Kan. 420, 158 Pac. 34, an act to establish courts in certain counties that was general in form but had many restrictions, was considered and held to be unconstitutional. It contained a number of characteristics found in the act in question. Of that act it was said:

"While the act under consideration is couched superficially in general terms, the peculiar restrictions of its application dependent upon population of counties and of cities within such counties, inclusion and exclusion of cities, inclusion and exclusion relative to judicial districts, inclusion and exclusion dependent upon popular vote, all demonstrate that it is intended to operate only in Reno county and possibly one or two others. It is therefore special legislation. . . . No justification for this special act is shown, and none can be judicially conceived. It violates the uniformity clause of the state constitution. It attempts to cover subjects which not only can be governed by general laws but which have been governed by general laws since the foundation of the state, and is clearly at variance with the provisions of section 17 of article 2 of the state constitution." (pp. 426, 427.)

The general rule stated in the syllabus of that case is equally applicable here, to wit:

"An act of the legislature which attempts a classification of counties which is capricious, illogical and unreasonable is essentially special and not general in its nature, and cannot be upheld under the scrutiny of the constitutional amendment of 1906. (Const., art. 2, § 17.)"

As the act under consideration is held to be repugnant to the constitution it is unnecessary to consider the claim that it was not properly repassed after it had been vetoed by the governor.

The judgment of the district court is affirmed.