No. 28,560.

THE STATE OF KANSAS, ex rel. BRYAN J. HOFFMAN, County Attorney, *Appellee*, v. SWIFT AND COMPANY, C. J. MCPHERSON and J. R. PAYTON, *Appellants*.

(275 Pac. 176.)

Opinion filed March 9, 1929.

*C. W. Burch, B. I. Litowich* and *LaRue Royce,* all of Salina, for the appellants.

*Bryan J. Hoffman,* county attorney, and *Z. C. Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action in the name of the state on the relation of the county attorney to enjoin defendants from maintaining a structure and business alleged to constitute a public nuisance on one of the strees of the city of Salina, and to require the removal and abatement thereof. Defendants' demurrer to the petition was overruled, and they have appealed from that ruling. Later, defend-

ants having elected to stand on their demurrer and not to plead further, a default judgment was rendered for plaintiff as prayed. Defendants' motion for a new trial was overruled, and they have appealed from the judgment and the order overruling the motion for a new trial. Both appeals present substantially the same questions and are presented together in this court.

The petition, after formal allegations, avers in substance that Elm street, in the city of Salina, a city of the first class, has been open and in constant use as a public street for its entire width for many years until obstructed by defendants, and that the street at the point in question is within the business section of the city and sustains a heavy vehicular traffic; that about 1926 defendants, owning lots on Elm street, erected on such lots a four-story business building which has since been used in carrying on their business of purchasing and selling poultry, eggs, and kindred products; that on the erection of the building defendants caused to be erected, and now maintain, what they call a loading and unloading dock along the south side of the building and immediately south of the line of their lots, which dock is 120 feet long, 10 feet wide and 5 feet high, and which extends to and encroaches upon Elm street its entire length and width, and also constructed and maintain a canopy over the dock which extends into and over Elm street 11 feet or more the full length of the dock; that in the conduct of their business defendants' automobile trucks and other conveyances, during all hours of the day, are backed up and driven alongside of the dock for the purpose of receiving and delivering merchandise, which trucks and conveyances appropriate and use the street to the extent of 10 feet or more and deprive the public from the use of that portion of the street; that defendants deposit and keep on the dock during all business hours a large number of chicken crates, egg cases, boxes and merchandise, and render travel upon the dock impractical and unsafe; that defendants, by the means aforesaid, have appropriated for their exclusive use practically the north half of Elm street for the distance of 120 feet in front of their building; that public school buildings are located near and children going to school, and other pedestrians, are unable to use the sidewalk in front of defendants' building because of the obstructions and use made of it by defendants, and are compelled to walk out near the center of the street, which is dangerous because of the heavy vehicular traffic. The petition further avers "that said encroachments and said obstructions so created and main-

tained by defendants are unlawful and without right, and constitute a public nuisance and deprive the public of a large and material portion of said street dedicated and designed for public use, and have caused and are causing great and irreparable injury to persons having occasion to travel over and upon said street, and renders the use of said street by said persons unsafe and dangerous . . ."

Appellants argue that their demurrer to the petition should have been sustained for the reason that the plaintiff cannot maintain the action; that by statute the fee title to the streets of a city is in the county, but that the control of the streets is in the city, citing *McGrew v. Stewart*, 51 Kan. 185, 32 Pac. 896; *State v. Franklin County*, 84 Kan. 404, 114 Pac. 247; *City of Topeka v. Shawnee County*, 91 Kan. 275, 137 Pac. 951; *Foster v. City of Topeka*, 112 Kan. 253, 210 Pac. 341; *City of Cottonwood Falls v. Chase County*, 113 Kan. 164, 213 Pac. 648; *Slocum v. City of Wichita*, 114 Kan. 260, 217 Pac. 297, and allied cases.

While it is true that, generally speaking, the city has control of the streets, in exercising such control it acts only as the arm of the state, and such control is not exclusive to the extent that the state is deprived of power and authority to abate a public nuisance conducted or maintained in a city street. In *Eble v. The State*, 77 Kan. 179, 93 Pac. 803, where a similar question was raised as to the authority of the state to maintain an action to enjoin and abate the obstruction of a public highway, the control of which was under the board of county commissioners, by reason of which it was contended that the state could not maintain the action, it was said:

"The state at large has an interest in keeping the highways in every county free from obstruction to public travel, no matter what the attitude of the local authorities upon the question may be. The willful obstruction of a highway is a public offense which the state may prosecute, even though the township trustee be disinclined or refuse to do so. Such an obstruction may be enjoined and abated as a common nuisance by the state, even though the board of county commissioners should be opposed to the suit; and the legislature has made it the duty of the county attorney to prosecute, on behalf of the people, all suits, civil or criminal, arising under the laws of the state, in which the state is a party or is interested." (p. 181.)

In *State v. Rabinowitz*, 85 Kan. 841, 118 Pac. 1040, the specific question of the authority of the state to maintain an action to enjoin a public nuisance in the streets and alleys of a city was before the court, and the right of the state to do so was upheld. It was said in the opinion:

"The code specifically provides that 'an injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance.' (Civ. Code, § 265.) This provision gives direct authority to the state for the injunction sought if the acts and things charged against appellees in the petition constitute a common nuisance. At the common law, acts done in violation of the law, or which are against good morals or public decency, and which result in injury to the public, constitute a public nuisance. (1 Wood on Nuisances, 3d ed., § 17; Joyce on Nuisances, § 5; 6 Cur. Law, 828.)

"A nuisance is public if it affects the community at large or if it affects a place where the public have a right to and do go, such as a park, street or alley, and which nuisance necessarily annoys, offends or injures those who come within the scope of its influence. That the illegal act is publicly, repeatedly and persistently committed in the streets of a city, thus offending and injuring all who use the streets and who necessarily come within the range of such an influence, is an important factor in determining whether it constitutes a common or public nuisance." (p. 847.)

Many authorities are cited in support of the rule of law announced in the opinion. (See, also, *Rose v. City of Gypsum,* 104 Kan. 412, 179 Pac. 348; *State, ex rel., v. Harper,* 114 Kan. 382, 219 Pac. 266; 20 R. C. L. 487; 29 C. J. 627.)

There is no lack of power of the state to maintain an action to enjoin and abate a public nuisance wherever the same may be located in the state.

Appellants contend that their demurrer to the petition should have been sustained for the reason the allegations of the petition that the obstructions were created and maintained by defendants "are unlawful and without right" is a conclusion of law as distinct from an allegation of fact. It is argued that the city, under its authority to control the streets of a city, may have granted permission to defendants to construct and use the dock in the manner it was constructed and was being used, and that the petition contains no allegation that the city had not granted such authority. We regard the point as not being well taken. About as distinct a way one can allege the nonexistence of a fact is to allege that it does not exist. The allegation that the defendants had constructed and maintained the obstruction "unlawfully and without right" negatives the existence of any lawful grant of authority by the state or any of its subdivisions for the construction and maintenance of the obstruction complained of. In that sense it is an allegation of fact, it being alleged as a fact that no such authority exists. It was not error to overrule the demurrer to the petition.

Appellants make the further contention that this is not the charac-

ter of a case in which a default judgment could be entered without evidence. The general rule is that where plaintiff's petition states a cause of action and defendant's demurrer thereto has been overruled, and defendant fails or refuses to plead further, the court is authorized to render judgment by default. (34 C. J. 167.) Our statute (R. S. 60-748) provides that the material allegations of a petition, not controverted by answer, "shall for the purposes of the action be taken as true," although the court may, with the assent of the party not in default, take evidence. (R. S. 60-3109.)

Any authority which defendants had for the construction and maintenance of the obstruction complained of was a proper matter of defense. That defense was waived by defendants declining to plead further. The record, therefore, stands as though no such defense exists, and it was proper for the court to so consider the matter at the time of rendering judgment.

The judgment of the court below is affirmed.

BURCH, J., not sitting.